**FRANKLIN LIFE INS. CO. et al. v. GREER.**

**No. 6394.**

Court of Civil Appeals of Texas. Texarkana.

Jan. 20, 1949.

Rehearing Denied March 10, 1949.

agent for her brothers, against The Franklin Life Insurance Company, upon an insurance policy issued by it to James Vaulta Greer. These parties will be hereafter referred to as plaintiffs. It was alleged by plaintiffs that James Vaulta Greer was their brother, that on May 26, 1946, he was "voluntarily and willfully killed" by his wife, Margaret Faye Greer; that by the terms of art. 5047 of the Revised Statutes the wife was precluded from collecting the amount due under the policy; that plaintiffs' and assured's mother and father were dead, thus making plaintiffs the nearest of kin to assured and entitled to the proceeds of the policy; plaintiffs alleged further that proofs of death and demand for payment had been made by them to the insurance company; that payment had not been made within thirty days after demand. In addition to the sum due them under the policy the plaintiffs sought 12 per cent damages on the amount due, together with reasonable attorney's fees. Margaret Faye Greer was made a party defendant to the cause. On July 1, 1947, Margaret Faye Greer, hereinafter referred to as the wife, filed her answer denying the claim of plaintiffs to the proceeds of the policy and by cross action sought, as beneficiary under the policy, full recovery for the benefits arising out of same. A full recovery, it was alleged, would amount to $3,000 regular life insurance and $1,500 under the accidental rider attached to the policy. The wife also sought twelve per cent damages and attorney's fees for failure to pay her the proceeds of the policy within thirty days after her demand upon the insurance company therefor.

Edwin M. Fulton and J. O. Duncan, both of Gilmer, and W. C. Hancock, of Pittsburg, for Franklin Life Ins. Co.

Mat Davis, of Gilmer and Sam B. Hall and Robert M. Sikes, both of Marshall, for Gladys Greer Nobles and another.

Florence & Florence of Gilmer, and D. S. Meredith, Jr., of Longview, for Margaret Faye Greer.

HALL, Chief Justice.

This suit was instituted May 26, 1947, by Gladys Greer Nobles, joined by her husband, Hamp Nobles, for herself and as

The Franklin Life Insurance Company, hereinafter referred to as the insurer, on June 30, 1947, filed its bill of interpleader, in which it admitted owing $3,002.41 to either plaintiffs or the wife, paid said amount into the registry of the court, requested the trial court to determine the issue of the rightful owner of said sum and prayed for a reasonable attorney's fee for filing the bill. At the same time the insurer filed its bill in the nature of a bill of interpleader in which it denied liability under the accidental feature of the insurance policy. The trial was to the court

without a jury and resulted in a judgment that the plaintiffs take nothing; that the wife recover the $3,002.41 deposited in court by the insurer, $750 as attorney's fees, twelve per cent penalty as damages ($360) and six per cent interest on the $3,002.41 from September 5, 1946. The judgment was in favor of the insurer on the accidental feature of the policy and it was allowed $500 as attorney's fee for filing its bill of interpleader to be deducted from the amount deposited with the clerk of the court. From this judgment all parties have appealed.

By their first point plaintiffs contend that the trial court erred in rendering judgment against them for the reason that the evidence shows conclusively that the wife willfully killed her husband, the insured. This point presents the controlling question here so far as the plaintiffs are concerned. They cannot recover of the insurer under the terms of Revised Statutes, art. 5047, until they establish that the wife, either as principal or accomplice, willfully brought about the death of the insured. The judgment rendered by the court, the trier of the facts, that the plaintiffs take nothing reflects that the finding by the court was contrary to the plaintiffs' contention, that is, that the wife did not willfully bring about the death of the insured. If from the record such issue is a disputed one or if there is not sufficient evidence to raise the issue, then we would not be justified in disturbing the judgment in so far as it affects plaintiffs.

The record reveals that the insured was killed by the wife in Tyler, Texas, on May 26, 1946. In the early part of the night before the killing occurred, the wife and her husband, the insured, together with a Mr. and Mrs. Smithers who lived in another apartment in the same building, went from their home in Tyler to Gladewater to get some whiskey. They purchased the whiskey and returned to Tyler after midnight. After they had reached home the wife testified that the following occurred:

"Q. When you got back did you all go into your room and the other people go in their rooms? A. Well, we used the kitchen together. All of us were in through there one time or the other. I started to fix a sandwich, because we hadn't eaten any supper. I asked my husband what kind of a sandwich he wanted, and that is the first time I knew he was mad, he had been perfectly nice all day, and he had been perfectly nice all night, and when we came back and I said to him what kind of a sandwich do you want me to fix, and all at once he said, "Why don't you fix that son-of-a-bitch a sandwich that sent you the money." That is the first time I knew he was mad.

"Q. That was the first time that you knew he was mad? A. Yes, sir.

"Q. Where were you in the house at the time? A. I was at the ice box.

"Q. What, if anything, did you have in your hands? A. I had a knife slicing meat and I went on fixing my sandwich.

"Q. He made that statement you said he made to you, then what did you do? A. He said, 'I am going to beat the God-damned hell out of you," and lots of other stuff about my getting the money.

"Q. Then he told you to go ahead and make the fellow a sandwich that you got the money from, then what happened? A. Well, he said lots of things."

The wife testified further that immediately before the killing assured made a vile threat to do her serious bodily injury. The wife testified further:

"Q. Did he have anything in his hands when he said that? A. No, sir.

"Q. What did you do? A. I hit him.

"Q. You turned around on him and hit him at least nine times across the head with that knife, didn't you? A. I don't remember.

"Q. And he wasn't making a single, solitary threatening move toward you, was he? A. No, sir.

"Q. He hadn't made any effort to beat you, had he? A. He said he was going to.

"Q. He actually made no effort to do that, did he? A. No, sir.

"Q. And all the time, all during the time you were chopping him over the head

and striking him here and here (indicating) and sticking him in the belly, he didn't offer one single bit of resistance, did he? A. No, sir. I didn't hit him in the stomach.

"Q. You didn't stick that knife in his stomach? A. No, sir, only on the head.

"Q. Is it your testimony that you didn't stick that knife in his belly? A. I don't remember it.

"Q. And he had never at any time said anything about killing you? He never had at any time? A. He had never threatened me before. He had threatened to beat me and did—(interrupted)

"A. I am talking about killing you?

"Mr. Florence: He didn't say he was going to kill her that night.

"Q. He had never threatened at any time to kill you, had he? A. No. sir.

"Q. You didn't kill him in self-defense, did you? A. No, sir.

"Q. Now, then, after you had killed him, the undertaker came down there, didn't he?

A. No, sir.

"Q. The undertaker didn't come in to take his body away? Mr. Th—— didn't come down there with an ambulance and take his body away? A. My husband wasn't dead. I didn't know he was hurt so bad, I didn't know how badly. When the detectives came—I stayed out of there. I thought he was drunk and was going to get them to help me. I didn't want him to beat me up again."

The wife in her deposition stated that the insured traveled extensively over Texas as a representative of the federal government and that she accompanied him on many of these trips. The insured assaulted her on numerous occasions particularly in Linden, Crockett and Livingston; that he was of a jealous nature and continuously accused her of being intimate with various men. The evidence also reflects that the wife entered a plea of guilty to murder without malice in the District Court of Smith County.

Taking the record as a whole it amply supports the implied finding of the trial court that the killing was not willful.

We think Revised Statutes, art. 5047, must be construed strictly as though it were a criminal statute and for that reason we feel justified in following the definition of the word "willful" as given by the Court of Criminal Appeals, as well as that given by our civil courts. The indictment to which the wife entered her plea of guilty is not before us, neither is the judgment of conviction. A copy of a bill of indictment was read to the wife and she was asked if she entered the plea of guilty to it in the District Court of Smith County. She said that she didn't know; that she plead guilty to murder without malice. The Waco Court of Civil Appeals in Indemnity Ins. Co. of North America v. Scott, 278 S.W. 347, 349, affirmed Tex.Com.App., 298 S.W. 414, in defining the word "willful" as used in the Workmen's Compensation Act, Rev. Statutes, art. 8309, Sec. 1, par. 4, Vernon's Ann.Civ.St. art. 8309, § 1, subd. 4, under the definition of the term "injury sustained in the course of employment says:

"Since 'willful' in the statute quoted is used to modify 'intention,' it evidently means something more than intentional or voluntary and apparently involves the further element of evil intent or malice, included in such definition."

In Steher v. State, 23 Tex.App. 176, 4 S.W. 880, 882, the following definition of "willful" is approved: "Willful, 'in legal parlance, signifies with evil intent or legal malice, or without legal ground to believe the act to be lawful."

In Woodhouse v. Rio Grande Railroad Company, 67 Tex. 416, 3 S.W. 323, 324, is given the following definition of the word "willfully": "The word 'willfully' carries the idea, when used in connection with an act forbidden by law, that the act must be done knowingly or intentionally; that, with knowledge, the will consented to, designed, and directed the act."

See also Henderson v. State, 53 Tex.Cr. R. 533, 111 S.W. 736; Glazener v. State, 117 Tex.Cr.R. 605, 36 S.W.2d 752; Reeves v. State, Tex.Civ.App., 258 S.W. 577. Throughout her testimony the wife stated that she plead guilty to murder without malice; her testimony stands alone without corroboration or contradiction.

We have seen from the definitions set out above that word "willful" signifies "with evil intent or legal malice." So the record in this case at most raised an issue of fact as to whether or not the killing of the insured by the wife was "willful." The trial court rendered a take nothing judgment against plaintiffs. In such circumstances it will be presumed that the court found this issue against plaintiffs in support of the judgment. That is, that the wife did not "willfully" bring about the death of the insured.

The wife's point one asserts that the trial court erred in awarding attorney's fee in the sum of $500 to the insurer because the undisputed evidence shows that there was a substantial controversy between it and the other parties to this suit.

As heretofore stated, more than twelve months elapsed after proofs of death had been filed by both plaintiffs and the wife, and after suit had been instituted against it by plaintiffs to recover under the policy, before the insurer filed what it designated a bill of interpleader in which it tendered into court the sum of $3,002.41, due under the life insurance feature of the policy. At the same time insurer filed a plea in the nature of a bill of interpleader in which it denied all liability with respect to the claim for accidental insurance. In its bill of interpleader insurer sought and obtained judgment for attorney's fee for filing such pleading. It is the wife's contention that insurer is not entitled to attorney's fees for the reason that its pleadings (plea in the nature of a bill of interpleader) present a controversy between the parties as to the accidental feature of the policy. This is true, and for that very reason the insurer is not entitled to attorney's fees for presenting that feature of its case. But an entirely different question is presented in relation to the bill of interpleader tendering into court all the money claimed by the wife and plaintiffs on the life insurance feature of the policy. Certainly the insurer would be entitled to a reasonable attorney's fee for filing its bill of interpleader unless its right is lost by reason of unreasonable delay in filing same. Under the facts of this case laches or delay by the insurer in filing its bill of interpleader and making deposit in the registry of the court became a question of fact to be determined by the trier of the facts. Collins v. Griffith, Tex. Civ.App., 105 S.W.2d 895. The trial court having adjudged insurer entitled to the sum of $500 as a reasonable attorney's fee, the presumption obtains that the trial court also found, in support of said judgment, that the delay in filing the bill of interpleader was not unreasonable but was justified under the circumstances of this case. We conclude that the two pleas of insurer, namely, the bill of interpleader by which it made the deposit into court and the plea in the nature of a bill of interpleader in which it denied liability for accident insurance, if not entirely warranted by Rule 43, Texas Rules of Civil Procedure are separable, and the trial court was justified in allowing the insurer a reasonable attorney's fee for filing its bill of interpleader.

The wife's point two asserts that the trial court erred in failing and refusing to render judgment in her favor for the additional sum of $1,500 under the accidental insurance rider attached to the policy. This accidental rider provides under the heading of "Exceptions": "This accidental death benefit shall not be payable if the death of the insured shall result either directly or indirectly from any violation of the law by the insured."

The undisputed evidence shows that at the very time the wife killed the insured, he made a vulgar, vile and indecent threat to do her serious bodily injury. Art. 1265, P.C. provides: "Whoever shall seriously threaten to take the life of any human being or to inflict upon any human being any serious bodily injury shall be fined not less than one hundred nor more than two thousand dollars, and in addition thereto; may be imprisoned in jail not exceeding one year."

Art. 1266, P.C., provides that the threat must be seriously made and whether same is seriously made is a question of fact for the trier of the facts. Under the sordid record here, containing as it does evidence of numerous instances of assaults upon and mistreatment of the wife by insured, and the situation of the parties at the time the

threat was made, the trial court was warranted in concluding that the death of the insured was the direct result of his threat to do serious bodily injury to the wife. Texas Prudential Ins. Co. v. Turner, Tex. Civ.App., 127 S.W.2d 563.

Insurer in its appeal from that part of the judgment allowing the wife twelve per cent damages and attorney's fee against it, under R.S. art. 4736, Vernon's Ann.Civ.St. art. 4736, asserts that no demand on it for payment was made by the wife as required by provisions of the above statute. The wife on July 5, 1946, executed and delivered to the insurer proofs of death of the insured. As a part of the printed form of the proofs of death furnished by the wife is this statement: "The undersigned hereby makes claim to said insurance in the Franklin Life Insurance Company." There is no contention that this claim was not received by the insurer more than eleven months before it filed its bill of interpleader and pleading in the nature of a bill of interpleader. It is asserted by the insurer that the statement copied above from the wife's proofs of death does not constitute a demand for payment provided under art. 4736, R.S., as a prerequisite to the entry against insurer of judgment for an additional twelve per cent damages and attorney's fee for failure to pay the loss under said policy "within thirty days after demand." The plaintiffs also filed proofs of death with the insurer on June 11, 1946, and demanded payment of the proceeds due under the policy to them. Thus we have two rival claimants making demand upon the insurer for payment under the policy. There is nothing in the record showing a denial of liability of the insurer. There is evidence that letters passed between plaintiff and insurer but they are not brought forward in the record. As heretofore pointed out, plaintiffs filed suit against the insurer and the wife for the insurance due under the policy on May 26, 1947, and on June 30, 1947, the insurer filed its bill of interpleader and tendered $3,002.41 into court. Under the judgment of the court awarding insurer $500 attorney's fee for filing its bill of interpleader, as heretofore pointed out, we must presume in support of said judgment that the trial court found that the insurer was not, under the circumstances of this case, guilty of laches or undue delay in filing its bill of interpleader, but that same was timely filed. We think the case of Drane v. Jefferson Standard Life Ins. Co., Tex.Civ.App., 146 S.W.2d 526, and authorities there cited, amply sustain the court in this matter. The right of interpleader is now determined by Rule, 43, T.R.C.P., and as said in the recent case of Security State Bank of Pharr v. Shanley, Tex.Civ.App., 182 S.W.2d 136, 138, "this rule clearly extends and liberalizes in this State the equitable remedy of interpleader." See also Great Southern Life Ins. Co. v. Kinney, Tex.Civ.App., 276 S.W. 741. Granting that the wife did make demand upon insurer to pay her the proceeds of the policy as contended by her, still it must be remembered that plaintiffs also made a demand on insurer for payment under the policy to them. Under such circumstances it could hardly be said that failure of insurer to pay the proceeds of the policy at its peril to either one of the contending parties is such a willful act on its part as would invoke the harsh provision of R.S. art. 4736. In Southwestern Ins. Co. v. Woods National Bank, Tex.Civ.App., 107 S.W. 114, 119, w/r it is said: "It cannot be stated as a matter of law that appellant would be liable for the payment of the penalty and attorney's fees, because it did not anticipate a lawsuit on the part of the rival claimants by instituting an interpleader suit, and bringing them into court to settle their disputes over the insurance money. The question is one of good faith on the part of the insurance company, and no matter who initiated the suit that would be the issue in so far as the penalty and attorney's fees are concerned. It is true that refusal to interplead for an unreasonable period, thereby practically compelling the institution of suits by the claimants, might become a circumstance tending to show a desire to evade payment, but it would not be such a circumstance as would justify a conclusion of law that there was bad faith in the refusal to pay. We think that proper construction of article 3071 (now 4736) is that the penalty and attorney's fees may be assessed when there is, after demand, a

willful failure to pay the proceeds of a policy. There is no such failure when there are rival claimants."

Especially is this true when considered in the light of the trial court's implied finding that insured was not guilty of laches in not sooner filing its bill of interpleader.

 For another reason the insurer is not liable for penalty and attorney's fees under the statute. The record reflects that at the trial in the court below plaintiffs and the wife agreed and stipulated that · they had each given due "proof to the Franklin Life Insurance Company of the death and loss of the said James Vaulta Greer, and have made demand and claim upon said company for the money due under and by virtue of said policy and the rider (accidental feature) attached thereto aforesaid, photostatic copy of which is attached hereto and made a part hereof; that the death of the said James Vaulta Greer, insured, resulted directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means." This stipulation and agreement in the record before the trial court fixed plaintiffs' and the wife's demand at $4,500. Upon the trial of the case before the court this demand was reduced to approximately $3,000, or by about one-third. Under such circumstances the insurer would not be liable for penalty and attorney's fee for the reason that the demand upon it by the interested parties was greatly in excess of the amount found to be due by it. First Texas Prudential Ins. Co. v. Smallwood, Tex.Civ.App. 242 S.W. 498; National Life Ins. Co. of U. S. A. v. Mouton, Tex.Civ.App., 242 S.W. 782; Southern Surety Co. v. Butler, Tex.Civ.App., 247 S. W. 611. In our opinion this point presents error.

Therefore the judgment of the trial court is affirmed in so far as it affects plaintiffs, awards to the wife the $3,002.41 in the registry of the court, the $500 attorney's fee to the insurer, and denies recovery on the accidental feature of the insurance policy. The judgment is reversed with respect to the award to the wife against insurer of the twelve per cent damages and attorney's fee, and in that respect

judgment is rendered in favor of the insurer.

Affirmed in part and reversed and rendered in part.