MARGARET FAYE GREER ET AL V. FRANKLIN
LIFE INSURANCE COMPANY.

No. A-2155. Decided June 22, 1949.
Rehearing overruled July 20, 1949.
(221 S. W., 2d Series, 857.)

*Mat Davis,* of Gilmer, *Robert M. Sikes* and *Sam B. Hill,* both of Marshall, for Gladys Greer Nobles, et al, *Florence & Florence,* of Gilmer, and *D. S. Meredith,* of Longview, for Margaret Faye Greer, petitioners.

The Court of Civil Appeals erred materially in holding that

the trial court made a proper finding of fact, because the judgments of both courts are in direct conflict with the admitted facts stipulated between plaintiffs, Nobles, and defendant Greer, (petitioner in Supreme Court) in open court upon the trial of this case in the trial court. Southern Surety Co. v. Anabnit, 24 S. W. (2d) 375; Mead v. Logan, 110 S. W. 189; Sovereign Camp v. Rodriguez, 125 S. W. (2d) 1069.

*McIntosh & Duncan, J. O. Duncan* and *Edwin M. Fulton,* of Gilmer, and *W. C. Hancock,* of Pittsburg, for respondent.

The Court of Civil Appeals made no error in holding that petition was not entitled to attorney's fees, damages and interest, or in refusing to render judgment for petitioner on the accidental death benefit rider. Drane v. Jefferson Standard Life Insurance Co., 139 Texas 101, 161 S. W. (2d) 1057; Nixon v. Malone, 100 Texas 250, 98 S. W. (2d) 380; Metropolitan Life Ins. Co. v. Wann, 130 Texas 400, 109 S. W. (2d) 470.

Mr. Justice Garwood delivered the opinion of the Court.

This three-cornered controversy relates to ordinary and accidental death benefits under an insurance policy issued by Franklin Life Insurance Company, a defendant below and the respondent here, upon the life of James Vaulta Greer, who met death from a knife wielded by his wife Margaret, the latter being the beneficiary named in the policy, a defendant below and a petitioner here. The action was initiated against the two named defendants by the remaining parties, Gladys Greer Nobles et al, next of kin of the insured, as joint plaintiffs, they asserting that both kinds of benefits were due by the insurer under the policy, and that the rights of the beneficiary Margaret thereto had been forfeited in their favor by her under Art. 5047 R. C. S. as "the principal * * * in wilfully bringing about the death of the insured." The defendant beneficiary by appropriate pleadings asserted her claim to both classes of benefits, and both she and the plaintiffs also sought interest, penalties and attorney fees against the insurer under Art. 4736 R. C. S. The defendant insurer in answering filed a bill of interpleader admitting responsibility to either plaintiffs or the beneficiary for, and accompanied by a court deposit for, the ordinary death benefits in the sum of $3,002.41, and also a similar pleading with respect to the accidental death benefits of $1,500.00, but without tender of this latter sum, for which it denied liability, although seeking determination of ownership as between the rival claimants in the event it should be held liable. In a trial

to the court judgment was rendered that plaintiffs take nothing; that the defendant beneficiary recover of the defendant insurer the $3,002.41 regular life benefits, plus attorney fees of $750.00, penalties and interest; that the defendant insurer have judgment denying liability for accidental death benefits and allowing it attorney fees of $500.00 in connection with its interpleader.

On appeal by all parties, the Court of Civil Appeals affirmed the judgment as to all points except the award under Art. 4736 to the beneficiary Margaret, as to which item the trial court was reversed and judgment rendered for the insurer. 219 S. W. (2d) 137. We granted writ of error on application of the unsuccessful next of kin to review primarily the holding of the courts below denying their right to the ordinary life benefits as against the beneficiary; the application of the latter being granted as a matter of course under the circumstances. Both applications complain of the holdings below in favor of the insurer on the issues of accidental death benefits, award under Art. 4736, and interpleader fees.

■ On the point on which the writ was granted, we conclude that there was error and that the judgment must be reversed and rendered for the next of kin.

Art. 5047 R. C. S. was enacted in 1919. Its terms eliminate the interest of the beneficiary in favor of "the nearest relative of insured" where the beneficiary "wilfully" brings about the death of the insured. The principle underlying the statute is nothing novel in Anglo Saxon—or Latin civil jurisprudence, judicial or legislative. See Appleman, Insurance Law and Practice (1941) Vol. 1, Ch. 20; Restatement of the Law, Restitution sections 187, 189; Annotations in 91 A. L. R. 1486, 70 A. L. R. 1539; 20 Tex. L. Rev. 237; 49 Harv. L. Rev. 715; 30 Harv. L. Rev. 622; XXI Columbia L. Rev. 385; National Life & Accident Ins. Co. v. Thompson, 153 S. W. (2d) 322, 324, Tex. Civ. App., wr. ref.; New York Mutual Life Ins. Co. v. Armstrong, 117 U. S. 591, 6 Sup. Ct. 877, 29 L. Ed. 997; Metropolitan Life Ins. Co. v. McDavid, E. D. Mich., 39 Fed. Supp. 228; Smith v. Todd, 155 S. C. 323, 152 S. E. 506, 70 A. L. R. 1529; State v. Phoenix Mutual Life Ins. Co. 114 W. Va. 109, 170 S. E. 909, 91 A. L. R. 1482; Minasian v. Aetna Life Ins. Co. 295 Mass. 1, 3 N. E. (2d) 17; Schreiner v. High Court of I. C. O. of F., 35 Ill. App. 576. The 1918 decision of the Court of Civil Appeals in Murchison v. Murchison, 203 S. W. 423, which may well have been the cause of the enactment, recognized the injustice of allowing the

beneficiary to recover on a policy when she had murdered the insured, though refusing to apply the principle so as to give the proceeds to the next of kin in view of our unqualified statutes of inheritance, including Art. 2465 (now 2574) R. C. S., forbidding "corruption of blood or forfeiture of estate" as a result of a criminal conviction. While for various policy reasons, including the interest of simplicity, we think Art. 5047 should, generally speaking, be held to restate, rather than merely supplement, the common law to the extent that life insurance policies may be involved (compare Smith v. Todd, supra), it yet seems altogether proper to interpret and apply the article in the light of the common law, as suggested in Art. 10, R. C. S., particularly paragraphs 6 and 8 thereof.

So viewed, Art. 5047 is not to be treated as a criminal or even a civil penalty statute against the beneficiary. Nor do we think it violates Art. 1, Sec. 21 of the State Constitution, which is in the same terms as Art. 2574 R. C. S., referred to in the Murchinson case. Restatement of the law, supra, Sec. 187, Comment c; Hill v. Noland, 149 S. W. 288, Tex. Civ. App., wr. ref., does not require a different conclusion. In that case, incidentally, the more modern view of imposing a constructive trust upon property inherited by a murderer from his victim, for the benefit of the heirs other than the murderer, was evidently not suggested or considered. The word "wilfully" in Art. 5047 is all that presents any difficulty in the instant case. As we recently pointed out in Paddock, Trustee et al v. Siemoneit et al, 147 Texas 571, 218 S. W. (2d) 428, the word is far from being one of art in civil jurisprudence, and while it has been said that there is a difference between its meaning in "common parlance" and in the field of criminal law (see Caldwell v. State, 55 Texas Cr. Rep. 164, 115 S. W. 597 (131 Am. St. Rep. 809), the latter, to judge from expressions in various decisions of our Court of Criminal Appeals and in texts such as 12 Tex. Jur., Criminal Law, Sec. 34, is at least rather flexible. We agree with the Court of Civil Appeals that, as used in Art. 5047, "wilfully" connotes something more than that the beneficiary shall have intended the death of the insured to result from his or her act. Obviously the factor of illegality must also be present. But we cannot agree that the word means in substance "maliciously". Even in the criminal law decisions it is sometimes said to mean merely that the accused was without legal ground to believe the act to be lawful. Caldwell v. State, supra; Steher v. State, 23 Texas App. 176, 4 S. W. 880. Among the common law authorities heretofore mentioned, including the Restatement, the rule is sometimes expressed in terms of the crime of "murder", and there is some confusion of opinion where the conduct of the

beneficiary amounts only to "manslaughter". Metropolitan Life Ins. Co. v. McDavid, supra; Appleman, Insurance Law and Practice, supra; see also 20 Tex. L. Rev. supra, p. 239; 49 Harv. L. Rev. supra, p. 722. One of the best considered opinions we have examined on the subject as appertaining to the instant situation is that of the McDavid case last above cited, in which upon a careful review of the authorities, it was held that where the beneficiary intends to kill the insured and the killing is illegal, the beneficiary loses his or her rights under the policy, even though the killing was done under the immediate influence of sudden and violent passion from an adequate cause. We consider that decision a sound expression of the common law. The principle that one shall not profit by his (or her) own wrong has, of course, its limits, as evidenced by the refusal of courts to bar the beneficiary in cases of negligent homicide or "involuntary manslaughter", but it seems good policy and not illogical to disregard the too often narrow difference between passion and malice; while on the other hand, as pointed out in the McDavid case, the rule based on intent and illegality as distinguished from malice will properly operate to permit recovery in certain unusual instances, where, for example, the killing of the assured, though legally a murder, was, from the standpoint of the killer-beneficiary, a mere accident.

■ We think it entirely reasonable to interpret "wilfully" in the statute to mean the same as the common law test of the McDavid case, and, so doing, conclude that the evidence of the instant case brings the latter conclusively within its terms. While, as would apparently be true in the criminal law, the beneficiary Margaret's stipulation that she killed the insured with a knife, and her admissions on the stand or otherwise that she did it by chopping his head and stabbing him in the abdomen, may not alone establish her intent to kill as a matter of law, since a knife is not per se a deadly weapon (see Baylor v. State, 151 Tex. Cr. App. 365, 208 S. W. (2d) 558), she not only offered no substantial evidence of a lack of deadly intent or of legal justification of her act but expressly admitted it was not done in self defense or even against resistance on the part of the victim, and that previous to the trial she had pleaded guilty to "murder without malice", making no suggestion that the circumstances of the plea were such as to give it less than its normal effect. Her statement that she was the object of a vile threat of physical harm from the assured just before she killed him amounts to no more than evidence of adequate provocation to anger, when considered in the light of her further express admission that he gave no indication of being equipped to, or of intending to, carry the threat into execution. Her testimony

shows that she was not unversed in the term "murder without malice". Under our law this type of murder includes as an essential element that the killing be "voluntary", that is, intentional, in addition to being illegal. Art. 1257c, P. C. Whatever be the rule as to admissibility or effect in a civil suit such as this of a criminal conviction of the crime in issue, we think the wholly unqualified admission of a plea of guilty with the other evidence above mentioned and in the absence of contrary evidence, established intent and illegality as a matter of law. For cases on the subject of admissibility of pleas of guilty in civil suits, see 20 Am. Jur., Evidence, Sec. 648; 30 Am. Jur., Judgments, Sec. 294; 80 A. L. R. 1147, 130 A. L. R. 699.

■ As to the further question of whether the respondent insurer is liable for the accidental death benefits, there is clearly no merit in the contention of both petitioners that the contractual provision relied on by the Court of Civil Appeals, which bars recovery where the accidental death results "directly or indirectly from any violation of the law by the insured", is "a provision for any mode of settlement at maturity of less value than the amounts insured on the face of the policy" prohibited by subdivision 3 of Art. 4735 R. C. S. The agreement covering the ordinary life benefits was on a separate form of several sheets, called a "policy" and bearing the number 469049, while that covering the accidental death benefits was in the more or less usual form of a "rider", being a separate sheet, separately signed, attached at the end of the "policy" and describing itself as a "Supplemental Agreement attached to and forming part of Policy No. 469049." The sum therein agreed to be paid was obviously additional to and no part of the sums recited on the first page or face of the "policy", the latter being payable regardless of the provisions of the rider. See Great Southern Life Ins. Co. v. Akins, Tex. Civ. App., 105 S. W. (2d) 903, 904, wr. ref.; Great Southern Life Ins. Co. v. Cunningham, 128 Texas 196, 97 S. W. (2d) 692. So the argument evidently is that the rider constitutes a separate policy for $1500 and the quoted provision thereof the forbidden "mode of settlement" of less than that amount. The latter conclusion is expressly rejected in the last sentence of the opinion in the Akin case, and we add that, if the rider be properly considered a separate policy, it must then be considered also a "purely accident" policy in the words of the statute, which is accordingly inapplicable by its own terms. The Court of Civil Appeals properly disregarded the above discussed contention of the petitioners and, in our view, correctly held that, under the evidence and presumed findings of the trial court, to the effect that the insured was killed by his wife as a result of a criminal threat made by

him, recovery of accidental death benefits was barred by the above quoted provision of the rider denying them where his death should result directly or indirectly from a violation of law on his part. This view is entirely consistent with our holding that the beneficiary Margaret killed the insured intentionally and illegally, though doubtless in a fit of rage provoked by the threat.

■ We are further of the opinion that the Court of Civil Appeals correctly held the respondent insurer not chargeable with attorney fees, penalty or interest under Art. 4736 R. C. S., in connection with the judgment of recovery by the beneficiary, Margaret, of the $3,002.41 ordinary life benefits paid into court by the respondent insurer, and that accordingly said respondent is not chargeable with such items in connection with the recovery which we now adjudge to the petitioners, next of kin. Nor do we find error in the allowance of an attorney fee to the respondent on its interpleader.

The judgments below are reversed in so far as recovery was allowed the petitioner, Margaret Faye Greer, the beneficiary named in the policy, and judgment is here rendered that said petitioner take nothing by her cross action, and that as against said petitioner and the respondent, The Franklin Life Insurance Company, the petitioners, Gladys Greer Nobles et al, next of kin of the deceased, James Vaulta Greer, recover the aforementioned sum of $3,002.41 deposited in court. In all other respects the judgment of the Court of Civil Appeals is affirmed.

Opinion delivered June 22, 1949.

### ON MOTION FOR REHEARING.

As pointed out in the motion for rehearing of petitioners, Gladys Greer Nobles et al, the dispositive portion of the opinion leaves some doubt as to whether the attorney's fee of $500.00 allowed respondent, the Franklin Life Insurance Company, is to be paid out of the $3,002.41, which said respondent deposited in the trial court. Accordingly, the opinion is hereby changed by adding to the penultimate sentence thereof the words "less the sum of $500.00 awarded to the above-named respondent as an attorney's fee, which sum shall be paid said respondent from said deposit." In all other respects the motions for rehearing of the petitioner above named and petitioner Margaret Faye Greer are overruled.

Opinion delivered July 20, 1949.