Martha Shelton GABLER, Appellant,

v.

The MINNESOTA MUTUAL LIFE INSUR-
ANCE CO., Appellee.

No. 8165.

Court of Civil Appeals of Texas,
Texarkana.

Aug. 14, 1973.

Rehearing Denied Sept. 4, 1973.

James K. Peden, III, Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellant.

Larry Lesh, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellee.

CORNELIUS, Justice.

This is a suit instituted by Martha Shelton Gabler against Minnesota Mutual Life Insurance Company to recover the proceeds of a life insurance policy in which she was the named beneficiary and to recover 12% penalty and reasonable attorney's fees under Sec. 3.62 of the Texas Insurance Code (Tex.Rev.Civ.Stat.Ann.Ins. Code, Sec. 3.62 V.A.T.S.). The company filed an answer in the nature of a bill of interpleader, tendered the policy proceeds into the registry of the court and impleaded the administratrix of the estate of Howell H. Shelton, the insured. The administratrix filed no answer and the court directed payment of the funds to Mrs. Gabler, reserving for trial by jury the issue of Mrs. Gabler's entitlement to the 12% penalty and her reasonable attorney's fees. The case was submitted to the jury on two issues. Issue No. 1 inquired if the insurance company " . . . acted in good faith because of rival claims in refusing to pay the policy proceeds to the plaintiff before suit was filed?" Issue No. 2 asked the amount of attorney's fees which would reasonably compensate Mrs. Gabler's attorney. The jury in answering Issue No. 1 found that the insurance company did act in good faith. Based upon this finding the trial court entered judgment denying Mrs. Gabler's claim for penalty and attorney fees.

Appellant, Mrs. Gabler, brings forth three points of error which urge two principal contentions. They are (1) that the jury's finding of "good faith" on the part of the insurance company in its refusal, on the basis of rival claims, to pay the beneficiary is supported by no evidence, or insufficient evidence, or is against the great preponderance of the evidence because there was submitted to the company a legal precedent which it believed, and which in fact, rendered the rival claim insupportable; and (2) the trial court erred in admitting into evidence certain letters between the rival claimant and the group policyholder and the insurance company which tended to show the existence of the rival claim and which contained discussions relating to the claim, on the ground that such letters were hearsay. We overrule both contentions and affirm the judgment of the trial court.

The insurance policy in question was a group policy which was issued to the town of Highland Park. Howell Shelton, one of Highland Park's employees, was insured for $5,000.00, and he named his wife, Martha Shelton, as the beneficiary. Howell H. Shelton and Martha Shelton were later divorced. Mrs. Shelton subsequently remarried and is now Mrs. Martha Shelton Gabler. Mr. Shelton died on April 28, 1971, without having changed the beneficiary. Mrs. J. H. Shelton, the insured's mother, was named as administratrix of his estate. Mrs. Gabler filed proof of loss and demanded payment of the policy proceeds on May 18, 1971. Four days earlier Mr. David Ivy, an attorney representing the administratrix of the estate, wrote a letter to

the policyholder, the town of Highland Park, stating among other things:

" . . . . it is our opinion that these policies and the proceeds thereof belong to Mr. Shelton's estate as a result of a property settlement agreement . . .

"We respectfully request that you not pay the proceeds of the above policies to the named beneficiary until this matter has been settled between the parties or litigated in court . . . "

On May 26, 1971 Minnesota Mutual wrote to Mr. Ivy stating:

"We have received a notice of the death of Howell H. Shelton, the certified copy of the death certificate, and the enrollment card of the deceased, dated March 1, 1968, naming Martha Goldsmith Shelton as the beneficiary. We do not have a change of beneficiary card naming the estate as beneficiary. Therefore, if there was a property settlement in the divorce decree of January 14, 1970 between Martha Shelton and Howell Shelton, we will need a certified copy of the divorce decree, which was issued at that time.

"When the proper beneficiary has been determined, we will return the certified copy of the divorce decree."

On June 14, 1971 Minnesota Mutual wrote to appellant stating:

"We have received the claim forms, certified copy of the death certificate, and the enrollment card for the deceased insured. We have not, however, received the certified copy of the divorce decree which was requested of Attorney David M. Ivy in a letter dated May 26, 1971. "When we receive the certified copy of the complete divorce decree, we should be able to continue the processing of this claim."

On June 29, 1971, John D. Griggs, Appellant's attorney, wrote Minnesota Mutual advising:

"Please be informed that I represent Mrs. Martha Shelton Gabler, the beneficiary of the above life insurance policy.

"This letter is a demand of payment of the policy as provided and agreed to by your company.

"Should you have any doubt as to payment to the named beneficiary it is suggested your attorney read the recent Supreme Court of Texas case Partin v. de Cordova . . .

"It is suggested you give this important matter your immediate attention."

Again, on July 8, 1971 Griggs wrote Minnesota Mutual stating:

"Your letter of June 14, 1971 stated that you were waiting for a certified copy of a divorce decree which you had requested from Attorney David M. Ivy. I do not know the purpose of the request for the certified copy of the divorce decree nor why you have contacted Mr. David M. Ivy for such copy. However, for your information the divorce was granted January 14, 1970 . . . If you desire a certified copy of the divorce decree you may write the District Clerk of Dallas County, Texas, and ask for said certified copy of the divorce decree.

"Please also consider this letter a further demand upon your company for payment to my client, the named beneficiary under the policy of insurance."

On July 12, 1971 Minnesota Mutual wrote to Mr. Griggs, appellant's attorney, stating:

"Pursuant to your letter of June 29, 1971, we have reviewed the Court of Civil Appeals of Texas case, Partin v. de Cordova . . .

"The above noted case seems to be directly on point and thus, clearly seems to indicate that your client, Mrs. Martha Shelton Gabler, is entitled to the proceeds of the above numbered policy.

"Since we wish to pay out the proceeds of the policy to the proper beneficiary as soon as possible, I am today writing the attorney representing the estate of Mr. Shelton, and requesting that he immediately inform us of his position in view of the above mentioned case and its decision. It may be possible that he knows of other information relative to the present situation that would act adversely against Mrs. Martha Shelton Gabler's claim for the proceeds.

"If the attorney representing the estate of Mr. Shelton does possess such adverse information, and thus, continues to demand the proceeds for the estate, we will undoubtedly have to file an action of interpleader to avoid the possibility of double liability.

"As mentioned before, based on the facts we now have, it would appear your client has the superior right to the policy proceeds. I hope you will bear with us until we receive an answer as to the position of the estate.

"Thank you for your cooperation and information supplied. I will write again immediately upon ascertaining the position of the estate."

On the same date, July 12, 1971 Minnesota Mutual wrote David M. Ivy, counsel for the insured's estate, stating:

"Pursuant to the above numbered claim, we have recently received a letter from an attorney representing Mrs. Martha Shelton Gabler, former wife of Howell H. Shelton, and the named beneficiary of the policy.

"You will note that Mrs. Gabler demands the proceeds of the policy as the named beneficiary thereof. Mrs. Gabler makes this claim in spite of the fact that the ownership of the above numbered policy was given to Mr. Shelton by their divorce decree.

"You will note that Mrs. Gabler's attorney suggested that we read the case which he cited in his letter of June 29, 1971. We have reviewed that case, and it is our opinion that decision of such case does in fact give Mrs. Gabler the superior right to obtain the proceeds of the policy . . .

"In view of Mrs. Gabler's claim and the decision of the above mentioned case, I would appreciate your immediate reply as to the estate's position in view of such holding. In view of the holding of that case, do you still continue to demand the proceeds of the policy for the estate of Mr. Shelton? If so, I would appreciate knowing the basis of such claim.

"We are most anxious to pay you the proceeds of this policy, and hope that an action of interpleader can be avoided."

There was evidence that several times the attorney for Mrs. Gabler and the attorney for the estate discussed the possibility of settling the claims, but no agreement was reached. On August 27, 1972, the insurance company was served with citation in this suit and on September 14, 1972, it filed its answer and bill of interpleader.

Sec. 3.62 of the Texas Insurance Code provides that when a life insurance company fails to pay life benefits within thirty days after demand therefor such company shall be liable for an additional 12% as penalty, together with reasonable attorney's fees. This statute, however, is not applicable when the insurance company is faced with rival claims for such proceeds and in good faith declines to pay the beneficiary and deposits the proceeds in court for a decision as to which party is entitled thereto. McFarland v. Franklin Life Insurance Company, 416 S.W.2d 378 (Tex.Sup.1967); Demmer v. American Nat. Ins. Co., 263 S.W.2d 795 (Tex.Civ. App.-San Antonio 1953, no writ); Grand Lodge Colored Knights of Pythias of Texas v. Watson, 145 S.W.2d 601 (Tex.Civ. App.-Waco 1940, no writ); Drane v. Jefferson Standard Life Co., 139 Tex. 101, 161 S.W.2d 1057, (Tex.Comm.App. 1942

opin apprvd.) ; Murray v. Bankers Life Co., 299 S.W.2d 730 (Tex.Civ.App.-Fort Worth 1957, error ref'd) ; Franklin Life Ins. Co. v. Greer, 219 S.W.2d 137 (Tex. Civ.App.-Texarkana 1949, reversed on other points, 148 Tex. 166, 221 S.W.2d 857 (Tex.Sup.1949).

From a careful review of the record here we cannot conclude as a matter of law that the insurance company failed to come within this exception, or that the jury finding was not supported by sufficient evidence or was against the great weight and preponderance of the evidence. We believe the jury was authorized to find from the evidence that a rival claim was in existence on the part of the estate of Mr. Shelton, and that the insurance company acted in good faith. The insurance company here was not dealing with the mere *possibility* that a rival claim might be interposed, as was the case in McFarland v. Franklin Life Insurance Company, supra. In that case, as the Supreme Court said in its opinion:

> "The October 29th letter from Mrs. John V. McFarland's attorney gave no indication that she intended to claim all or any part of the policy proceeds. It was a mere inquiry—nothing more. . . .
>
> " . . . The mere possibility that facts giving rise to an adverse claim could exist does not constitute reasonable grounds . . . "

In the case at bar there was more than a mere inquiry. There was a positive assertion by the estate that ". . . these policies and the proceeds thereof belong to Mr. Shelton's estate . . ." and a request " . . . that you not pay the proceeds . . . to the named beneficiary until this matter has been settled between the parties or litigated in court . . ."

Mrs. Gabler contends that the rival claim must have been "actively asserted" throughout the period before interpleader is filed and, inasmuch as the insurance company here heard nothing from the estate after writing it on July 12, 1971, asking if the estate still demanded the proceeds, that the claim was not being actively asserted. We do not believe the authorities cited by Mrs. Gabler place such a construction on the term "actively asserted." It·is sufficient if the claim is actually asserted and circumstances do not indicate that it has been abandoned or withdrawn. It is not necessary that constant pressure or continuing demands be made by the claimant so long as it reasonably appears to the insurance company that the rival claimant still claims the proceeds. Of course, continued silence or inactivity on the part of the rival claimant will eventually give rise to an indication that the claim has been abandoned, but this is a fact issue bearing upon the insurance company's good faith belief. Franklin Life Insurance Company v. Greer, supra. In view of the relatively short period of time expiring after the letter of July 12 and the filing of suit by Mrs. Gabler, we believe there was sufficient evidence here to justify the insurance company's belief that the rival claim had not been abandoned or withdrawn.

■ Mrs. Gabler urges that because the insurance company was cited to the authority of Partin v. de Cordova, 464 S.W.2d 956 (Tex.Civ.App.-Eastland 1971, error ref'd), and the company advised both·her attorney and the attorney for the estate that such case appeared to be in point and indicated that Mrs. Gabler was entitled to the insurance benefits, the insurance company's refusal to pay Mrs. Gabler thereafter could not have been in good faith due to rival claims. To understand the applicability of Partin v. de Cordova, supra, it is necessary to note that the basis of the estate's claim here was that in a property settlement agreement executed in the Shelton divorce, the policy in question was agreed to belong to Mr. Shelton's estate rather than to the divorced wife. Partin v. de Cordova involved a like situation and the court held that the divorced wife was nevertheless still entitled to the proceeds as the named beneficiary. Even so, to accept

Mrs. Gabler's contention in this respect would, as a practical matter, destroy the efficacy of interpleader. The very purpose of interpleader is to allow an innocent stakeholder facing rival claims to let the courts decide who is entitled to the fund and thus avoid the peril of acting as judge and jury itself. To hold that a stakeholder in such a case must research the law and the facts and at its peril decide itself which claim is valid, rather than paying the fund into court for a judicial determination thereof, would be to compel the very thing interpleader was designed to avoid. Of course, a manifestly frivolous claim will not support an interpleader. Rio Grande National Life Ins. Co. v. Schmidt, 292 S.W.2d 864 (Tex.Civ.App.-Dallas 1956, no writ); Employers' Casualty Co. v. Rockwall County, 120 Tex. 441, 35 S.W.2d 690, 38 S.W.2d 1098 (Tex.Sup.1931). But we do not believe the claim here could be classed as such. As inferred by the insurance company's attorney in his letter to Mrs. Gabler's attorney, dated July 12, 1971, the existence of other facts not known to the company could possibly distinguish the estate's claim here from that involved in Partin v. de Cordova. An analogous situation was present in Givens v. Girard Life Insurance Company, 480 S.W.2d 421 (Tex.Civ.App.-Dallas 1972, error ref'd, n. r.e.), where a statute was claimed to make it clear that the rival claimant could not recover. The court held that in spite of the statute, the insurance company was not required to adjudicate the matter but was entitled to interpleader. We believe that case and the case of Demmer v. American National Insurance Company, supra, support our holding. As said by Justice Pope in the Demmer case, ". . . . there was no duty on the part of the insurer to act as judge and jury."

■ There is also the question whether the insurance company here should have interpleaded within thirty days, or at least before suit was brought by one of the claimants. Our courts have held that when there are rival claimants a delay in filing interpleader until after one of the claimants has filed suit does not deprive the insurance company of the benefits of these rules, as long as the insurance company's delay is reasonable and in good faith. Southwestern Insurance Company v. Woods National Bank, 107 S.W. 114 (Tex.Civ.App.1907, error ref'd); Franklin Life Insurance Company v. Greer, supra. In Franklin Life Insurance Company v. Greer, interpleader was not filed until more than twelve months after demand for payment of the insurance benefits, and the insurance company was held not liable for penalty and attorney's fees.

■■ Mrs. Gabler next complains that the court erred in admitting the letters passing among Mr. Ivy, the estate's attorney, and the town of Highland Park and the insurance company, for the reason that such letters constituted hearsay. Out of court writings or declarations, when offered to prove only the *utterance* of the words of statements and not the *truth* of such words or statements, are not hearsay and are admissible when the utterance of such words is relevant. They are received because the mere making of the statements has legal significance without regard to whether the statements are true. Sanders v. Worthington, 382 S.W.2d 910 (Tex. Sup.1964); Irving Lumber Company v. Alltex Mortgage Company, Inc., 446 S.W. 2d 64 (Tex.Civ.App.-Dallas 1969, affm'd), 468 S.W.2d 341 (Tex.Sup.1971); Wigmore on Evidence, 3rd ed. 1940, Sec. 1745, 1766 and 1767. The letters here showed that a rival claim had been communicated to the insurance company and what kind of response it generated, as well as the efforts being made to determine the basis for the claim. The letters were offered not for the truth of the matter stated therein, but to show the existence and basis of the rival claim and they were admissible for that purpose. In addition, the statements of the insurance company therein were admissible as an exception to the hearsay rule to show the state of mind or motives of the insurance company as bearing upon the is-

sue of good faith. Davis v. Argonaut Southwest Insurance Company, 464 S.W.2d 102 (Tex.Sup.1971); Great American Indemnity Company v. Elledge, 159 Tex. 288, 320 S.W.2d 328 (1959); Fulmer v. State of Texas, 445 S.W.2d 546 (Tex.Civ.App.-Fort Worth 1969, ref'd n. r. e.); Liberty Mutual Insurance Company v. Preston, 399 S.W.2d 367 (Tex.Civ.App.-San Antonio 1966, ref'd n. r. e.).

Finding no reversible error, all of appellant's points of error are overruled and the judgment of the trial court is affirmed.