**Joseph M. RUMBAUT, Appellant,**

v.

**Steven and Scott LABAGNARA, Appellee.**

**No. A14–88–00910–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 3, 1990.

Rehearing Denied June 7, 1990.

Luis F. Suarez and Kevin Dubose, Houston, for appellant.

William G. Rosch, III, David G. Allums, Benjamin L. Hall, Robert E. Hudson, D. Craig Oliver, and Jeffery Steidley, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

Texas law disallows recovery of life insurance proceeds by a beneficiary who is a party to willfully causing the insured's death. TEX.INS.CODE art. 21.23. This case requires us to decide whether *gross negligence* is subsumed within the notion of willfulness. We hold it is not.

### I.

Appellant's wife Ana Maria Rumbaut was lost at sea, when a sudden storm arose in the Gulf of Mexico where the two of them were sailing. Because Mrs. Rumbaut's will named appellant as executor of her estate, he applied for probate upon his return. Appellees, Mrs. Rumbaut's sons by a previous marriage, contested the application and alleged that appellant had willfully caused their mother's death.

The central dispute at trial focused on appellant's inexperience as a boatsman: he had only six hours of sailing time before he and his wife set out for Cozumel on their new craft. She had none. He testified that she had been swept overboard during a storm, and that his rescue efforts (later assisted by the Coast Guard) were unavailing. Appellees questioned appellant's recitation of events as inconsistent and extremely suspicious. They took the position that his conduct in making the trip amounted at the very least to gross negligence, given the couple's virtually nonexistent nautical skills. In its charge to the jury the trial court inquired whether appellant had willfully caused his wife's death. The jury answered in the affirmative, and the court awarded appellees the $750,000 in life insurance proceeds.

At the heart of this appeal is whether the court properly defined "willfully" in its charge. That definition reads:

The term "willfully" as used in this charge may mean that the person alleged to have brought about the death of another person either desired to bring about the physical results of his act or believed that they were substantially certain to follow from what he did.

or

"Willfully" as used in this charge may mean more than intentional conduct which results from momentary thoughtlessness, inadvertence or error of judgment. It means an act or conduct committed without justification which demonstrates such an entire want of care as to indicate that the act or conduct complained of was the result of conscious indifference to the rights, safety, or welfare of the persons affected by it.

To decide this question we must examine art. 21.23, the cases construing it, and the principles of appellate review of a jury charge.

### II.

The statute in effect when the relevant events took place provided as follows:

The interest of a beneficiary in a life insurance policy or contract heretofore or hereafter issued shall be forfeited when the beneficiary is the principal or an accomplice in willfully bringing about the death of the insured. When such is the case, the nearest relative of the insured shall receive said insurance.

TEX.INS.CODE art. 21.23 (Vernon 1981).[1] Because the Legislature has not furnished a

---

1. In its present form the statute reads:
   The interest of a beneficiary in a life insurance policy or contract heretofore or hereafter issued shall be forfeited when the beneficiary is the principal or an accomplice in willfully bringing about the death of the insured. When such is the case, a contingent beneficiary named by the insured in the policy shall receive the insurance unless that contingent beneficiary was also a principal or an accomplice in willfully bringing about the death of the insured. If no contingent beneficiary is named by the insured in the policy or if all contingent beneficiaries named by the insured in the policy were principals or accomplices in willfully bringing about the death of the insured, the nearest relative of the insured shall receive said insurance.
   *Id.* art. 21.23 (Vernon Supp.1989).

definition of "willfully," we must turn to judicial decisions for guidance in ascertaining the word's meaning.

The leading case on point is *Greer v. Franklin Life Ins. Co.*, 148 Tex. 166, 221 S.W.2d 857 (1949). At issue there was the effect of a guilty plea to "murder without malice." The intermediate appellate court chose to construe the statute strictly, as though it were a criminal law. 219 S.W.2d 137, 141 (Tex.Civ.App.—Texarkana 1949). Upon examination of Texas cases that court concluded that the "word 'willful' signifies 'with evil intent or legal malice.'" *Id.* at 142. The supreme court reversed. Justice Garwood explained for a unanimous court that the law was not a criminal or even a civil penalty statute. 221 S.W.2d at 859. He continued:

> We agree with the Court of Civil Appeals that ... "willfully" connotes something more than that the beneficiary shall have intended the death of the insured to result from his or her act. Obviously the factor of illegality must also be present. But we cannot agree that the word means in substance "maliciously."

*Id.* In the course of further discussion the opinion refers to its rule as one "based on intent and illegality as distinguished from malice," *id.* at 860, and concludes that "the wholly unqualified admission of a plea of guilty with the other evidence above mentioned and in the absence of contrary evidence, established intent and illegality as a matter of law." *Id.* Judgment was therefore rendered in favor of the next of kin and against the killer.

Next came *Bounds v. Caudle*, 560 S.W.2d 925 (Tex.1977). The beneficiary in that case had been convicted of negligent homicide. He made two major arguments to the court: first, that no legal basis existed for application of art. 21.23; second, that the charge should have contained an instruction on self-defense. A unanimous court agreed with the latter contention and remanded the cause for a new trial, but not before rejecting the statutory claim. It had been argued that § 41(d) of the Texas Probate Code took precedence over art. 21.23. This claim rested on § 41(d)'s requirement of *criminal conviction* of a willful

killing before a forfeiture could ensue. Willful killing alone would not suffice. Art. 21.23 contains no such requirement. Accordingly, the beneficiary urged rendition in his favor, because mere negligent homicide could not supply the requisite willfulness to satisfy § 41(d). The Court rejected his contention:

> The imposition of a common law constructive trust in a situation such as presented here is not inconsistent with the legislative intent behind Sec. 41(d) which requires an outright forfeiture in the case of a convicted killer.

> The jury here found: (1) that Dr. Bounds shot and killed Mrs. Bounds; (2) that the action of Dr. Bounds in shooting and killing Mrs. Bounds was *intentional;* and (3) that such action was *wrongful.* These jury findings fully support the judgment of the trial court forfeiting his interest in the insurance policy on the life of Mrs. Bounds and imposing a constructive trust on the property devised to him under her will.

560 S.W.2d at 928 (emphasis added).

The question we face is how to interpret the court's analysis of those jury findings. At first sight one might perceive a departure from *Greer's* rule of intent plus illegality, in favor of intent plus wrongfulness. Upon reflection it is plain that no such departure took place. Confronted with specific factual findings, the court simply determined that the trial court's judgment could properly rest on the verdict; it did not formulate a new definition of "willfully." This distinction makes a difference, for reasons which we shall explain below. Before reaching the matter of judicial "approval" of jury instructions, however, we pause to consider a pair of decisions from the Fort Worth Court of Appeals.

In *Seedig v. Dennis*, 701 S.W.2d 354 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.) the beneficiary had shot her husband in the leg, leading to his death from loss of blood. Despite her denial of any intent to *kill*, the trial court ordered a forfeiture

under art. 21.23. The court of appeals framed the issue as follows:

> There is no question in this case but that Mrs. Seedig intended to hit Mr. Seedig because that is what she testified. It is the contention of Mrs. Seedig that as it was not shown that she intended to bring about the death of Mr. Seedig, her right to his insurance should not be forfeited, and, thereby hangs the real question in this appeal.

701 S.W.2d at 355. It was significant to the appellate court that Mrs. Seedig challenged only one finding: intentionality of the killing. In light of *Bounds v. Caudle*, the Fort Worth court characterized Mrs. Seedig's appeal as omitting the issue of wrongfulness. It then had no trouble affirming the judgment, given the conflicting evidence and the absence of findings of fact by the trial judge. Interestingly, the opinion nowhere referred to *Greer v. Franklin Life Ins. Co.* Nor was there any mention of a case which had come out of the Fort Worth court three weeks earlier, a case which constitutes the cornerstone of appellees' defense of the judgment before us today. We now turn to that decision and its pertinence to the present appeal.

### III.

■■ That case is *Crawford v. Coleman*, 701 S.W.2d 79 (Tex. App.—Fort Worth 1985), *rev'd on other grounds*, 726 S.W.2d 9 (Tex.1987). The definition of "willfully" before us today is taken virtually word for word from the one given in *Crawford.* In the printed version of *Crawford* one reads that "willfully" means:

> more than intentional conduct which results from momentary thoughtlessness, inadvertence or error of judgment. It means an act or conduct committed without justification which demonstrates such an entire want of care as to indicate that the act or conduct complained of was the result of conscious indifference to the rights, safety, or welfare of the persons affected by it.

701 S.W.2d at 81. We say printed version, because we have great difficulty reconcil-

ing this excerpt with the court's disposition and discussion of the salient point of error:

> We have previously disposed of appellant's contention that his definition of self-defense should have been given. In reviewing his assertion that the words "momentary thoughtfulness (sic), inadvertence or error of judgment" should be deleted from the definition, if such deletion were made, in effect, it would result in the deletion of the first sentence which states in effect that willful conduct is something more than mere negligent conduct. Such a statement is correct and is properly placed in the definition complained of. Appellant's third point of error is overruled.

*Id.* at 83. The foregoing explanation would be decidedly more comprehensible if the concerned phrase in the definition "more than intentional conduct" had actually said "more than negligent conduct," and thus the reference to intentionality could be dismissed as a mistake in printing, rather than one in reasoning. As it stands, the *Crawford* opinion mystifies us.

What, for example, is meant by more than intentional conduct? The *Crawford* charge defines that essentially as gross negligence, which is of course *less* than intentional conduct. *See, e.g., Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex. 1981); 1 State Bar of Texas, Pattern Jury Charges 4.02 (2d ed. 1987). This is as if a jury in a criminal case were told to find the accused guilty of murder only if he shot his victim by accident. It may be the law that "use" means "non-use." [2] It is not the law that "willful" means "gross negligence."

The need for this sort of bright line is illustrated by a hypothetical put by the Chief Justice to appellees' counsel at oral argument. Suppose H and W drink themselves into severe intoxication. They get into their car and W tries to drive, but she soon has an accident, one which she survives but H does not. Counsel responded that a jury could find W had willfully caused H's death. We disagree. The legislature can pass a specific statute covering such conduct, but art. 21.23 is not that type

---

2. *See Robinson v. Central Texas MHMR Center,* 780 S.W.2d 169 (Tex.1989).

of enactment. Moreover, our law contains few concepts with fuzzier edges than gross negligence, and we prefer to stay with the plain meaning of the text.

Our conclusion is not altered by the events following the Fort Worth court's decision. The supreme court's reversal on other grounds failed to address the charge problems in that case. *See* 726 S.W.2d 9. Likewise, the legislature's statutory response to the high court's opinion simply did not deal with the issue we face. *See* TEX.INS.CODE art. 21.23 (Vernon Supp.1989). We are unwilling to take these two instances of silence as any positive approval of the *Crawford* definition. Furthermore, the whole notion of a court "approving" a definition runs counter to the prohibition on rendering advisory opinions. It is one thing to say that a definition is *incorrect*, as urged by a litigant. It is quite another thing—so much so as to be different in kind—to say that a definition is affirmatively *correct*, because that sort of blanket assertion means the court must reject *all* hypothetical complaints which could ever be made against the particular language. Orthodox procedural doctrine has long held that:

> Appellate courts are not authorized to "approve" a court's charge. They are empowered only to pass on points which present specific objections, properly preserved, to an actual charge under the unique facts of a particular case, and to determine whether reversible error is demonstrated by the objection raised under the record in that case.

*Ahlschlager v. Remington Arms Co.*, 750 S.W.2d 832, 836 n. 2 (Tex.App.—Houston [14th Dist.] 1988, writ denied), *quoting State v. Jamail*, 416 S.W.2d 473, 475 (Tex. Civ.App.—Waco 1967, no writ); *accord State v. Tidwell*, 435 S.W.2d 619, 620–21 (Tex.Civ.App.—Waco 1969, no writ).

█ Because the definition given below was incorrect, we need not examine its unusual structure, namely the disjunctive construction. Our inquiry does not end here, however, because appellant argues that the evidence is legally insufficient to find him culpable within the meaning of the statute. If we agree that *no* evidence supports a finding of willfulness, then we must reverse and render; on the other hand, if there exists any evidence in favor of the verdict—even though factually insufficient—we must reverse and remand.

The question is not an easy one. Plainly, the only person who could furnish eyewitness testimony is appellant himself, and he flatly denied any intent to cause his wife's death. But because his testimony is contrary to the verdict, we cannot consider it. Instead we must examine only those portions of the evidence which support the jury's finding. Application of this standard in its customary formulation presents us with a dilemma: either we rely on various snippets of circumstantial evidence (such as the high magnitude of insurance coverage), or we hold in essence that since appellant's version of the shipboard events was the only one presented to the jury, the law forbids the jury to disbelieve him and *requires* a verdict in his favor. To put it another way, for us to sustain appellant's legal insufficiency challenge we must hold that, on this record, reasonable minds could not conclude appellant was untruthful in his recitation of events. Yet the law recognizes the fact-finder as the sole determiner of credibility. An appellate court simply lacks the capacity to judge the believability of witnesses. Here that distinction becomes critical, because appellant's veracity is the linchpin of the litigation.

The establishment of a culpable mental state is commonly done by use of circumstantial evidence, as we know from criminal jurisprudence. *See, e.g., Ferrantello v. State*, 158 Tex.Crim. 471, 256 S.W.2d 587, 593 (1952) ("whether an act is done willfully is not ordinarily the subject of direct proof, but it is a state of mind of the accused which the jury may find from the evidence as a whole."); *Thompson v. State*, 676 S.W.2d 173, 175 (Tex.App.—Houston [14th Dist.] 1984, no pet.) (same). We therefore turn to the pertinent circumstances.

The most obvious aspect of such proof is the couple's nautical background: they had virtually no sailing experience yet launched

off into the Gulf of Mexico during hurricane season. Appellees then adduced evidence of financial motivation by showing that appellant owed over $200,000 on his house and nearly that amount on the boat. This indebtedness pales in comparison with the $750,000 of life insurance coverage. When asked how he could afford to make payments on the house and the boat, appellant testified that he could not, especially given that he had since quit work. As to the voyage itself, appellees sought in essence to make out a case of a preplanned accident waiting for a place to happen. For example, there was testimony that appellant's wife had limited swimming skills. And appellant stated that the boat's life lines were not working properly before the voyage. He knew this posed enough of a problem to call for remedial measures, but no one made the appropriate repairs; he himself tried to fix the lines before departure, but without success. In addition, appellant could not recall ever having familiarized himself with use of the ship's autopilot, a device which became significant when the decedent went overboard. According to his testimony, difficulty in adjusting the autopilot resulted in a spatial separation between the boat and the decedent such that he could never relocate his wife.

We believe these circumstances constitute *some* evidence from which the jury could have found as it did. The first point of error is sustained and the second one overruled. We reverse the judgment and remand the cause for new trial.

J. CURTISS BROWN, Chief Justice, dissenting.

I agree with the court that the trial court's submission of the question of whether the beneficiary was a principal or accomplice in willfully bringing about the death of the insured did not meet the controlling test established by our Supreme Court in *Greer v. Franklin Life Ins. Co.*, 148 Tex. 166, 221 S.W.2d 857 (1949). I dissent because of my belief that the judgment should be reversed and rendered in favor of appellant because there is no legally sufficient evidence to support a finding

that meets the terms of the statute and our Supreme Court cases construing it. There is no evidence, direct or circumstantial, showing appellant caused his wife to fall overboard. Evidence that this was a *two* person "Ship of Fools" will not meet the test.