Phynies and Flora
CRAWFORD, Appellants,

v.

Martha Shoaf COLEMAN, As Next
Friend of Cornell Warren Shoaf,
A Minor, Appellee.

Cornelius SHOAF, Appellant,

v.

Phynies and Flora CRAWFORD and
Martha Shoaf Coleman, As Next Friend
of Cornell Warren Shoaf, a Minor, Appellees.

No. 2–85–071–CV.

Court of Appeals of Texas,
Fort Worth.

Dec. 19, 1985.

Menaker & Huffman and Mark Huffman, Dallas, for appellants-appellees Phynies and Flora Crawford.

S.C. Cocanower & Assoc., P.C., and S.C. Cocanower, Fort Worth, for appellant Cornelius Shoaf.

Smith, Abney & Woolf and Gerald A. Woolf, Houston, for appellee Martha Shoaf Coleman, As Next Friend of Cornell Warren Shoaf.

Before FENDER, C.J., and ASHWORTH and HILL, JJ.

## OPINION

ASHWORTH, Justice.

Cornelius Shoaf appeals a judgment denying him insurance proceeds because a jury found he willfully caused the death of his wife, the insured. The wife's parents appeal that portion of the judgment which awarded some insurance proceeds to a stepson of the wife.

Judgment affirmed.

We will first address the appeal presented by Cornelius Shoaf. Cornelius was an employee of the State of Texas; his wife, Sandra, was an employee of Tarrant County, Texas. Four life insurance policies were in force at the time of Sandra's death. The policies named Cornelius primary beneficiary. The insurance companies filed an interpleader naming the parties to this suit and paid the insurance proceeds into the registry of the court. Upon the trial of the cause, the jury found Cornelius had willfully caused the death of Sandra. The trial court then found that Cornelius had forfeited his right to receive the insurance proceeds under TEX.INS.CODE ANN. art. 21.-23 (Vernon 1981) which states:

The interest of a beneficiary in a life insurance policy or contract heretofore or hereafter issued shall be forfeited when the beneficiary is the principal or an accomplice in willfully bringing about the death of the insured. When such is the case, the nearest relative of the insured shall receive said insurance.

Cornelius presents three points of error. His first point contends error of the trial court in failing to submit to the jury his requested instruction regarding self-defense.

The following instruction was requested by Cornelius and refused:

When a person is attacked with unlawful deadly force, or he reasonably believes he is under attack or attempted attack with unlawful deadly force, and there is created in the mind of such person a reasonable expectation of fear of death or serious bodily injury, then the law excuses or justifies such person in resorting to deadly force by any means at his command to the degree that he reasonably believes immediately necessary (viewed from his standpoint at the time) to protect himself from such attack or attempted attack.

The trial court submitted one issue to the jury which inquired if Cornelius willfully brought about the death of Sandra. The following definition was given:

As used in this charge, "willfully" means:

more than intentional conduct which results from momentary thoughtlessness, inadvertence or error of judgment. It means an act or conduct committed without justification which demonstrates such an entire want of care as to indicate that the act or conduct complained of was the result of conscious indifference to the rights, safety, or welfare of the persons affected by it.

TEX.R.CIV.P. 277 generally provides in part that the trial judge shall submit causes on special issues and shall submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict. Considerable discretion is given to the trial court in determining what instructions are necessary and proper in submitting issues to the jury. *Houston Nat. Bank v. Biber*, 613 S.W.2d 771, 775 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

Cornelius contends the issue of self-defense was raised in the instant case because of severe wounds to his hands and arms apparently caused by being cut with a knife; that the wounds occurred in the home of Cornelius and Sandra and were characterized as defense wounds by the medical examiner.

There was no direct testimony as to what actually occurred on the night of Sandra's death. Sandra's sister and brother-in-law had visited Sandra and Cornelius on the night of her death and left about 11:00 p.m. The sister returned to Sandra's home about an hour later. Apparently a struggle had occurred between Cornelius and Sandra with each being wounded by a butcher knife which was found in their home. Sandra was found in the kitchen of the home with twenty to thirty stab wounds to her chest, numerous wounds to her head, some teeth apparently knocked out, a stab wound to her cheek, a severe wound to the back of her head, and her right ear was cut. Cornelius was found the next morning asleep in the closet of a house nearby which was under construction. He was wearing only his shorts and socks; his blood soaked blue jeans were found in his home. Cornelius refused to answer any questions on the ground that the answers might tend to incriminate him.

We hold the evidence did not support an instruction on self-defense. There was only one knife used in the incident. Viewing the evidence in the very best possible light from Cornelius' viewpoint and engaging in supposition, Sandra assaulted him with the knife without provocation. In attempting to defend himself, Cornelius was successful in wresting the knife from Sandra, but suffered severe injuries to his hands and arms in doing so. At this point, Cornelius' contention fails. Was it then

necessary in order to defend himself to take the attack to Sandra—causing her to suffer a severe blow to the back of her head, knocking out some of her teeth, cutting her right ear, and stabbing her at least twenty or thirty times? We hold that there is no supposition that would warrant the infliction of such wounds on Sandra on the theory that they were a necessary part of Cornelius' actions in defending himself. The trial court did not err in refusing to give the requested instruction on self-defense. In addition, the definition given by the trial court stated in effect that in order to find that Cornelius willfully brought about the death of Sandra, the jury must find it was done without justification. Such an instruction permitted Cornelius to argue that the wounds inflicted on Sandra were justified—essentially the same as the self-defense theory. Mindful of the discretion vested in the trial court in the submission of special issues and instructions, *Houston Nat. Bank v. Biber*, 613 S.W.2d at 775–76, there was no error in the manner in which the issue and instruction were submitted. Appellant's first point of error is overruled.

In his second point of error, appellant contends the trial court erred in failing to grant his first motion for continuance which prevented him from being able to assist his attorney in selecting a jury.

Appellant filed a motion for continuance on April 24, 1984. In the motion he urges as reason the fact that his criminal action is still on appeal and he cannot intelligently determine whether to testify. He also states that the case was set for April 24, 1984; his attorney was notified at 3:00 p.m. on such date that the trial would commence at 9:00 a.m. on April 25, 1984; Cornelius was contacted at 6:30 p.m. on April 24, 1984, but would be unable to travel from Houston to Fort Worth in time for the trial.

The granting or denial of a motion for continuance is within the discretion of the trial judge, and the denial of such motion will not be disturbed on appeal unless there is an abuse of such discretion. *Manufactured Housing Management v. Tubb*, 643 S.W.2d 483, 486 (Tex.Civ.App.—Waco 1982, writ ref'd n.r.e.).

We note that this case was filed on September 9, 1980. According to notations on the docket sheet, the case was set for trial on fifteen occasions prior to the April 23, 1984 setting. The age of the case should have been an indication to appellant that there was a good probability of the case being reached for trial. The record does not disclose why appellant could not travel from Houston to Fort Worth between 6:30 p.m. on April 24, 1984, and 9:00 a.m. on April 25, 1984; neither does the record show that any harm resulted from appellant's absence during the jury selection process. The record does show that appellant was called as the first witness in the case and apparently had been present during the opening statements of the attorneys. Under these circumstances we hold there was no abuse on the part of the trial court in overruling appellant's motion for a continuance. Appellant's second point of error is overruled.

Appellant's third point of error complains of the definition of "willful" in the court's charge; that such definition failed to place a proper burden on appellees and permitted them to recover upon a lesser showing of culpable fault than required by law; that his objections to the charge should have been sustained.

We set forth in full appellant's objections to the charge:

Mr. Cocanower, does the Defendant have any exceptions or objections?

MR. COCANOWER: Yes, Your Honor, he does.

Comes now the Defendant Cornelius Shoaf and objects and excepts to the Court's charge submitted to in this day and would respectfully show to the Court that the Supreme Court of the State of Texas has defined willfulness in Greer vs. Franklin Life Insurance as something more than shall have intended the death of the insured but something less than malicious having the factor of legality involved. The use of the words "momentary thoughtfulness, inadvertence or er-

ror of judgment" in conjunction with the word "intention" lowers this threshold standard of intentional to something more than mere negligence, thereby lessening the burden of proof upon each of the Plaintiffs in this cause.

Secondly, we would suggest that the words, "momentary thoughtfulness, inadvertence or error of judgment," be deleted from the definition of "willfulness" as presented in the Court's charge.

Thirdly, Mr. Shoaf would object to the exclusion from the charge of a definition of self-defense to further define the word "without justification" as used in the Court's charge in substantially the form submitted to the Court and with leave of this Court submit the same in writing before the argument to the jury in the morning.

Defendant would show unto the Court that the rebuttal of self defense has been raised by the evidence, both by the medical records which demonstrate the nature, extent and severity of Mr. Shoaf's injuries, including bruises, contusions, lacerations, two fingers almost severed from his body, together and combined with the testimony of the Plaintiffs' own witness about the defensive wounds that were sustained by Mr. Shoaf, that that is sufficient evidence entitling Mr. Shoaf to this instruction.

We will submit such instructions substantially in the form presented to the Court this day, in the morning.

Further Defendant says naught.

THE COURT: Thank you, Mr. Cocanower.

Defendant's objections and exceptions are overruled.

Appellant subsequently presented to the court his requested definition of self-defense as previously set forth in this opinion. Such requested definition was refused.

■ We have previously disposed of appellant's contention that his definition of self-defense should have been given. In reviewing his assertion that the words "momentary thoughtfulness (sic), inadvert-

ence or error of judgment" should be deleted from the definition, if such deletion were made, in effect, it would result in the deletion of the first sentence which states in effect that willful conduct is something more than mere negligent conduct. Such a statement is correct and is properly placed in the definition complained of. Appellant's third point of error is overruled.

We now turn to the appeal presented by Sandra's parents, the Crawfords. The Crawfords appeal that part of the judgment awarding the proceeds of two policies to Martha Shoaf Coleman, as next friend of Cornell Warren Shoaf, a minor. Cornell Warren Shoaf is the son of Cornelius by a prior marriage.

The policies in question are Equitable Life Assurance Society Policy No. 78 227 787 and Metropolitan Life Insurance Co. Policy No. 28500–G.

The Equitable policy is a family plan type which insured the lives of Cornelius, Sandra, and Cornell. That portion of the policy covering the life of Sandra and Cornell provides:

Beneficiary: The beneficiary arrangements specified in the Family Plan Insurance provision will apply unless otherwise designated in Special Instructions (in any such designation include Full Name and Relationship to Insured).

The Family Plan Insurance provides under the heading "Beneficiary Under This Provision":

| Family Member | Beneficiary |
| --- | --- |
| The Insured Spouse | The Insured, if living: if not living, the surviving children of the insured. |

The Metropolitan Life policy was a group policy available to Cornelius as an employee of the State of Texas. The policy provided for coverage of dependents as follows:

Eligible Dependents

A. The following dependents shall be eligible for coverage:

1. Your spouse.

2. Any unmarried child under twenty-five (25) years of age including (a) an adopted child, (b) a stepchild, foster child, or other child who is in a regular parent-child relationship....

The policy provides the following under the heading "Payment of Benefits":

Upon receipt of due proof of your death, while you are insured under the Group Policy, Metropolitan will pay the amount of insurance then in force on your life to the person or persons surviving at the date of your death in the following order of precedence:

First, to the beneficiary or beneficiaries designated by you on a signed and witnessed form received before death in your employing office. For this purpose, a designation change or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.

Second, if there is no designated beneficiary, to your widow or widower.

Third, if none of the above, to your child or children and descendants of deceased children by representation. Fourth,....

Sandra's parents, the Crawfords, argue that under TEX.INS.CODE ANN. art. 21.-23 (Vernon 1981), when the beneficiary willfully brings about the death of the insured, then the policy proceeds should be paid to them, as Sandra's nearest relatives. The Crawfords acknowledge that there is an exception to that rule as pronounced in *Deveroex v. Nelson*, 529 S.W.2d 510, 513 (Tex.1975), but contend that *Deveroex* does not apply in the instant case. *Deveroex* involved a situation where the insured was killed by his wife, the primary beneficiary. The wife disclaimed any right to the policy proceeds. The policy in question named Zan Nelson, "son", as sole contingent beneficiary. Zan was not the natural son of the insured; he was a stepson who the jury found had been adopted by estoppel. After their marriage, the insured and his wife had a natural son; the guardian of the estate of the natural son contended that the two sons, natural and adopted, should share the policy proceeds as next of kin under art. 21.23. The court held Zan, the adopted stepson, was entitled to the entire policy proceeds; that the legislature did not intend to forfeit the right of a guiltless named beneficiary; that the intent of the insured was effectuated by such holding; and that the legislative intent of art. 21.23 was to exclude the insurance proceeds from the insured's estate and thereby prevent the murderer from receiving such proceeds as an heir of the decedent's estate.

■ There is a notable difference between *Deveroex* and the instant case. In *Deveroex* the insured designated a specific individual as the contingent beneficiary and described his relationship as "son". In the instant case, the policies in question have printed provisions providing for the contingent beneficiaries according to relationship. This presents the question of whether such printed provisions provide for named beneficiaries as was considered in *Deveroex*. Each policy provides for the designation of contingent beneficiaries. The Equitable policy designates Cornelius, if living, as beneficiary, if not living, then to the surviving children (Cornell) of the insured (Cornelius is the insured in the Equitable policy; Sandra is the insured spouse). Since the policy gives the right to designate others than those specified as beneficiaries, it is proper to assume that Sandra intended for the proceeds to be paid as specified. We hold that the printed beneficiary provisions of the Equitable policy constitute named beneficiaries under *Deveroex*.

The Metropolitan policy presents yet another consideration. This policy was afforded to Cornelius because of his employment by the State of Texas, and authorized by the Texas Employees Uniform Group Insurance Benefits Act, TEX.INS.CODE ANN. art. 3.50–2 (Vernon 1981). It is noted that Sandra's life was insured under this policy as a family member at the option of Cornelius. However, the policy does not give Sandra the right to specify beneficiaries other than through Cornelius. Cornelius did not elect to name beneficiaries of that portion of the policy insuring Sandra's

life and apparently the printed provisions designating such beneficiaries suited him. Under such printed provisions, Cornelius was the primary beneficiary; he is disqualified under sec. 21.23; the next contingent beneficiary is the child or children of the employee—in this case Cornell. For the same reasons as discussed in the Equitable policy, we hold the printed provisions in the Metropolitan policy designating beneficiaries are named beneficiaries under *Deveroex.*

The trial court did not err in awarding the proceeds of the Equitable policy and the Metropolitan policy to Cornell, the son of Cornelius. The Crawfords' points of error are overruled.

Judgment affirmed.