**Norma Sharon CROSS, et al,
Appellants,**

v.

**JOHN HANCOCK MUTUAL LIFE
INSURANCE CO., Appellee.**

**No. B14–86–314–CV.**

Court of Appeals of Texas,
Houston (14th Dist).

Dec. 18, 1986.

Rehearing Denied Jan. 15, 1987.

Michael D. Miller, Galveston, for appellants.

John A. Buckley, Jr., Andrew J. Mytelka, Galveston, for appellee.

Before PAUL PRESSLER, SEARS and CANNON, JJ.

## OPINION

PAUL PRESSLER, Justice.

This is an appeal concerning a group insurance policy issued by Appellee on the life of Wanda Frances Lipari. She died intestate on February 9, 1982, and was survived by the appellants herein.

The death benefit payable under the policy was $23,760. On October 31, 1981, decedent had executed a form changing the beneficiary from William J. Gasek to her estate. On February 17, appellants' attorney wrote to Continental-Emsco Company, the decedent's employer, demanding payment of the insurance proceeds on behalf of his client, Willie Joe Gasek. This letter was forwarded to the appellee. On August 31, the appellants received their first response from the appellee which requested further information about the decedent's disability and death. On September 21, appellee notified appellants that the decedent had designated her estate as the beneficiary.

On September 28, the appellants' attorney made a formal demand for the proceeds of the policy on behalf of the estate. That letter did not include any information concerning any administration of the decedent's estate or the lack of necessity therefor.

On October 8, appellee wrote appellants' attorney acknowledging receipt of his correspondence and stating that they were "carefully considering the claim." On November 5, thirty-eight days after their formal demand, appellants received a mailgram stating: "Company still researching possibility of any liability for basic insurance under our policy, will advise as soon as decision reached. Company's rights reserved to the fullest."

On November 18, the appellants filed suit against Continental-Emsco Company and John Hancock Mutual Life Insurance Company. They alleged that they were the only heirs at law of the decedent and, therefore, were entitled to the death benefits. Appellants sought the policy proceeds as well as 12% damages and reasonable attorneys' fees, as provided by Article 3.62, Tex.Ins.Code Ann. (Vernon 1951), for failure to pay the policy proceeds within thirty days of demand. In its answer appellee admitted liability for the policy proceeds but denied liability for damages and attorneys' fees alleging that a proper demand had never been made.

The District Court found that the actions of appellee did not at any time constitute a denial of liability and since there had been no general denial of liability, appellee was not liable for the penalties or attorney's fees.

In their second point of error, appellants complain that the trial court erred in finding that appellee was not liable for twelve percent damages and attorney's fees under Tex.Ins.Code Ann. art. 3.62. Appellee's argument against liability under the statute is that: (1) appellant's never made a proper demand, and; (2) appellee never denied liability.

Appellee relies on the failure of appellants to file a small estate affidavit or assert that no administration was necessary, to justify its failure to pay the policy proceeds within thirty days of demand. In *Boomer v. Massachusetts Bonding and Ins. Co.*, 148 S.W.2d 945 (Tex.Civ.App.—El Paso, 1941, writ dism'd), an insurance company attempted to avoid liability under Article 3.62 "because no demand was ever made by Mrs. Boomer [the beneficiary] in the capacity of administratrix." *Boomer*, 148 S.W.2d at 948. The position of the appellee in *Boomer*, and in this case, was that it was not liable under the statute because it acted in good faith in withholding payment until the claimant had qualified as the representative of the estate. However, there is no good faith exception to the statute, except where the insurance company is in doubt as to whom the money should be paid because of conflicting

claims. This exception applies only when the insurance company acts in good faith and makes its position known promptly and clearly, promptly admits its liability and makes a bona fide tender of the full amount due. *Boomer,* 148 S.W.2d at 949. Not until almost seven months after the appellants filed their lawsuit, did the appellee here finally pay the face amount of the policy into the registry of the court.

In *Whittet v. Reliance Life Insurance Company of Pittsburg,* 213 S.W.2d 164 (Tex.Civ.App.—Ft. Worth, 1948, no writ) the insurance company admitted liability but called attention to the fact that the policies were payable to the executors, administrators or assigns of the insured and stated that payment would be made as soon as an executor or administrator was appointed or when an appropriate court order was furnished ordering payment to a person other than an executor or administrator.

The court held that:

> ... *[I]n the absence of a general denial of liability,* an insurance company is not liable for the payment of the penalties and attorney's fees provided for by [article 3.62] because of its insistence that a proper court order be secured before payment of the proceeds of an insurance policy is made to the heirs of the insured, when the policy expressly provides for payment to the executor, administrator or assigns of the insured.

*Whittet,* 213 S.W.2d at 166. [emphasis added]

In *Life Insurance Company of Virginia v. Oldham,* 385 S.W.2d 403 (Tex.Civ.App.—Amarillo 1964, writ ref'd n.r.e.) the insurance company sent the appellees four letters in which they admitted liability and requested some sort of judicial direction allowing them to pay the insurance proceeds directly to the heirs without liability to creditors of the estate. The basic issue to be resolved was whether the failure of the insurance company to pay the face amount of the insurance policies to the appellees constituted a denial of liability under Article 3.62. The court said, "To determine this question we must examine the position taken by the insurance company after demand for payment had been made. Evidence of this position can be determined from certain letters of the company and its pleadings filed in the case." *Oldham,* 385 S.W.2d at 404.

In both *Whittet* and *Oldham,* on which appellee relies, the insurance companies affirmatively admitted liability within thirty days and offered to pay the policy proceeds once a proper order was filed with respect to the estate. Here the appellee asserts, and the trial court found, that it never denied liability for the face amount of the policy and that it was always willing to pay the named beneficiary, the estate of Wanda Lipari. This assertion is not supported by the record.

■ The record reveals that the appellee knew sometime prior to August 31, 1982 that the insured had died. On September 28, the appellants' attorney made a formal demand for payment. On November 5, the appellee sent the mailgram indicating that it was still researching the possibility of any liability under the policy. Thirty-eight days after the formal demand, appellee had not admitted liability under the policy. In *Whittett, Oldham* and *Boomer,* the insurers pointed out to the claimants what they required prior to payment of the policy proceeds. Here the appellee never notified the appellants of what they required until well after the formal demand for payment.

It is clear not only that appellee never admitted liability until over a year after the insured's death but also that appellee failed to do anything to settle this claim. This is precisely the type of conduct the statute intends to penalize. The insurance company could, as it did, have declined to pay and take the chance of being wrong and incurring the penalty and fee. On the other hand, it could have admitted liability, filed an interpleader, or tendered the amount into court promptly, and let the complainants incur the expense incident thereto. *Boomer,* 148 S.W.2d at 949. The second point of error is sustained.

The judgment of the court below is therefore reversed and judgment rendered in favor of appellants for damages of $2,851.20, plus attorney's fees of $11,010 which the trial court found to be reasonable for services rendered to appellants through trial as well as $3,500 as a reasonable attorney's fee for this appeal. Costs of this appeal are hereby assessed against appellee.