**STATE FARM LIFE INSURANCE COMPANY and Lisa Martinez Paul, Appellants,**

v.

**Toni Wasson MARTINEZ, Appellee.**

No. 10–03–00365–CV.

Court of Appeals of Texas, Waco.

Aug. 17, 2005.

Eva C. Ramos, Skelton & Woody, Austin, Chris Kling and Stuart Smith, Naman, Howell, Smith & Lee, PC, College Station, for appellants.

Billy M. Payne, Payne, Watson, Miller & Malechek PC, Bryan, for appellee.

Larry A. Catlin, Youngkin, Catlin, Bryan Stacy & Dillard, Bryan, for other.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

This appeal involves a $500,000 life insurance policy issued by Appellant State Farm Life Insurance Company (State Farm) on the life of Jose Eduardo Martinez (Ed), who owned the policy. After Ed's death, his widow, Appellee Toni Wasson Martinez (Toni), and his daughter, Appellant Lisa Paul Martinez (Lisa), made claims for the life insurance proceeds. Toni filed suit against State Farm, and two days later State Farm filed a separate interpleader suit against Toni, Lisa, and Linda K. Martinez (Linda), Ed's ex-wife.

The two suits were consolidated, and Toni and Lisa filed motions for partial summary judgment, each contending that she was the proper beneficiary. The trial court granted Toni's motion and denied Lisa's. Toni's claim against State Farm for statutory penalties, attorney's fees, and interest proceeded to a bench trial, and the trial court entered a final judgment in Toni's favor based on findings of fact and conclusions of law.

Lisa and State Farm appeal the final judgment. Lisa says the trial court erred in its summary-judgment ruling; State Farm says the award to Toni of penalties, attorney's fees, and interest was error.

We will affirm the trial court's judgment.

### Factual Background

Ed and Linda married on June 15, 1981. In November of 1989, Ed obtained the $500,000 State Farm life insurance policy (No. LF–1041–9239) and named Linda as the beneficiary. Ed and Linda divorced on September 15, 1994 and entered into an Agreement Incident to Divorce (AID). The AID provides that Ed would make monthly contractual alimony payments of $5,000 to Linda, beginning on September

15, 1994 and continuing until August 15, 2004, unless Linda died or remarried before that date. The AID provides that, if Ed died before fulfilling his contractual alimony obligation, the AID is binding on his estate, which would then be responsible for the alimony payments to Linda.

The AID also provides that, as long as alimony is payable, Ed will name Linda as irrevocable beneficiary to a portion of the proceeds on the State Farm policy and on two other policies (not at issue in this case) in the respective amounts of $175,000 (State Farm) and $124,882.03 (Lincoln National). Ed was required to keep the three life insurance policies in full force and effect in a face amount sufficient to pay the sum of the then-remaining alimony payments. The AID further provides:

It is specifically agreed by the parties that so long as [Ed] maintains [Linda] as the beneficiary in an amount sufficient to pay her for the amount of alimony payments outstanding, that he may name as a beneficiary for the remainder of the above-described life insurance policies whomever he may choose. Further, if at some later date, [Ed] should determine to drop one or more of the policies above-described, he will be free to do so if the remaining policy or policies are sufficient to pay to [Linda] the amount of alimony payments outstanding.

The State Farm policy provides:

**Change of Beneficiary Designation.** You may make a change while the Insured is alive by sending us a request. The change will take effect the date the request is signed, but the change will not affect any action we have taken be-fore we receive the request. We have the right to request your policy to make the change on it.

The policy defines "request" as follows:
**Request.** A written request signed by the person making the request. Such request must be sent to us and be in a form acceptable to us.

On September 28, 1994, Ed signed a State Farm "Change of Beneficiary" form that named as primary beneficiary [1] "Linda Martinez, 41, ex-wife, in accordance with divorce decree dated 09–15–94," and as successor beneficiary "the estate of J.E. Martinez." State Farm recorded this change.

Ed then changed the successor beneficiary to Lisa on May 16, 1996 by signing another State Farm "Change of Beneficiary" form, which continued to name as primary beneficiary "Linda Martinez, 41, ex-wife, in accordance with divorce decree dated 09–15–94." This change was also recorded by State Farm. Also in May of 1996, with Linda's written consent, Ed changed the beneficiary of the $175,000 State Farm policy to his estate.[2]

On June 30, 1996, Ed and Toni married. On August 1, 2002, Ed signed a State Farm "Change of Beneficiary" form that named Toni as primary beneficiary and did not name a successor beneficiary. In an August 16, 2002 letter, State Farm's Barbara Keck wrote Warren Barker, Ed's State Farm agent, stating:

We received a request to change the beneficiary on the above mentioned life insurance policy. We are unable to process this request since it is prohibited by the insured's divorce decree dated 9/15/94.

---

**1.** Linda was not specifically identified by Ed as an "irrevocable" beneficiary in any of his designations of her on this policy.

**2.** The trial court found that Lisa was the last designated beneficiary on the $175,000 policy and that State Farm paid those policy proceeds to her.

We currently show the primary beneficiary as "Linda Martinez in accordance with Divorce Decree dated 9/15/94". Therefore, since he is asking to remove the former spouse and name his current spouse as primary, we need Court documentation stating that he has the right to remove the former spouse. Since we cannot process this change, we are returning the original request to you.

The beneficiary designation for this policy remains unchanged.

The record does not reflect that Ed received this letter or any similar communications. On August 25, 2002, Ed died. At the time of his death, Ed was obligated to pay contractual alimony to Linda for twenty-four more months ($5,000 per month), as long as she was living and had not remarried, a maximum of $120,000.

The underlying dispute over the life insurance proceeds of $500,000 began with Lisa's filing an application for the benefits on September 2, 2002 and Linda's filing on September 5, 2002. Toni filed her application on September 10, 2002, and State Farm acknowledged its receipt that day.

On November 20, 2002, Toni filed suit against State Farm, claiming that she was the rightful beneficiary and seeking statutory penalties, attorney's fees, and prejudgment interest. State Farm filed its interpleader action on November 22, 2002, naming Toni, Linda, and Lisa as defendants. The two suits were consolidated. Lisa and Toni filed competing motions for summary judgment, each contending to be the rightful beneficiary of the policy. Linda disclaimed any interest in the policy proceeds, subject to their security for her contractual alimony rights.

The trial court entered an order granting a partial summary judgment on Toni's motion and finding that Toni was the beneficiary, subject to a constructive trust on the portion of the policy proceeds equal to the amount of unpaid contractual alimony due and payable to Linda on a monthly basis. The order provided that as each monthly $5,000 payment is made to Linda from Ed's estate, in accordance with the AID, $5,000 would be released from the trust and paid to Toni. A separate order was entered denying Lisa's motion for summary judgment, stating that she was not the State Farm policy beneficiary.

After a bench trial on Toni's claims against State Farm, the trial court signed findings of fact and conclusions of law and entered a final judgment, finding that Toni was the State Farm policy beneficiary subject to the constructive trust and awarding her the following: 6% prejudgment interest in the amount of $25,506.73, an 18% statutory penalty of $76,520.19 under Article 21.55 of the Insurance Code, attorney's fees in the amount of $37,089.92, and additional appellate attorney's fees in the respective amounts of $10,000, $5,000, and $5,000 in the event State Farm is unsuccessful in the court of appeals, on petition for review to the Texas Supreme Court, and upon oral argument to the Texas Supreme Court.

### Who is the Beneficiary?

In her three issues, Lisa complains that the trial court erred in granting the partial summary judgment and entering final judgment that Toni is the beneficiary. Lisa asserts that she is the beneficiary as a matter of law. Lisa argues that because Ed's purported change of beneficiary to Toni did not comply with the AID and because State Farm rejected Ed's request, she is the last correctly named beneficiary.

We review the decision to grant a summary judgment de novo. *Rucker v. Bank One*, 36 S.W.3d 649, 652–53 (Tex.App.-Waco 2000, pet. denied). The well estab-

lished standards for reviewing a summary judgment are:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in her favor.

*Nixon v. Mr. Prop. Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented. *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex.1997).

 By its own terms and under Texas law, the insurance policy was a contract between Ed and State Farm. *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex.1994). An insurer's right to question the validity of the policy owner's change in beneficiary is determined by the policy's provisions, and the insurer's duty is to comply with a request that complies with the policy. *Salvato v. Volunteer State Life Ins. Co.*, 424 S.W.2d 1, 5 (Tex.Civ.App.-Houston 1968, no writ). If the policy owner substantially complies with the policy requirements for a beneficiary change, the insurer has a contractual duty to honor the request and effect the change. *Stewart v. Mutual Ben. Life Ins. Co.*, 522 S.W.2d 257, 260 (Tex.Civ.App.-Amarillo 1975, writ ref'd n.r.e.) (policy language requiring that re-

quest be "satisfactory" to insurer was not express policy condition requiring insurer's consent to request). For example, even if the insured's first wife had a community interest in the policy proceeds when payable, the insurer had neither the contractual right nor legal standing to prevent the insured from changing the beneficiary to his second wife. *Prudential Ins. Co. v. Burke*, 614 S.W.2d 847, 849 (Tex.Civ.App.-Texarkana), *writ ref'd n.r.e. per curiam*, 621 S.W.2d 596 (Tex.1981) (stating that court of appeals correctly decided case). Neither Lisa nor State Farm cites any authority that allows *an insurer* to prevent a beneficiary designation in the same or similar circumstances as this case.

State Farm asserts that Ed's request did not conform to the policy requirements because it was not "in a form acceptable to [State Farm]." State Farm disavows Toni's assertion that State Farm sought to impose its consent to Ed's beneficiary-change request, arguing (without citation to any authority) that this policy language means that the "request must be valid." Under the facts of this case, that can only mean "valid according to State Farm."

 Toni's assertion that State Farm improperly imposed its consent or approval to Ed's request is correct. State Farm's response was not "your request is not in a form acceptable to us;" it was "we think that you don't have the right to do this under your divorce decree."[3] State Farm's right to question the validity of Ed's change in beneficiary is determined only by the policy's provisions, and its duty was to comply with a request that complied with the policy. *Salvato*, 424 S.W.2d at 5. An insurer is and should be indifferent as to who the beneficiary is. *Oates v.*

---

**3.** The record does not show that State Farm ever had knowledge of the specific terms of the AID.

*Hodge,* 713 S.W.2d 361, 364 (Tex.App.-Dallas 1986, no writ) (citing *Drane v. Jefferson Standard Life Ins. Co.,* 139 Tex. 101, 161 S.W.2d 1057, 1061 (1942)). As long as Ed substantially complied with the policy requirements in requesting a beneficiary change, State Farm had a contractual duty, ministerial in nature, to honor his request and give it effect. *See Stewart,* 522 S.W.2d at 260 (policy language that request be satisfactory to insurer did not require insurer's consent as condition for beneficiary change); *Gladding v. Prudential Ins. Co.,* 521 S.W.2d 736, 737–39 (Tex. Civ.App.-Houston [1st Dist.] 1975, writ ref'd n.r.e.) (insured's beneficiary change naming her parents with initials and surname substantially complied with policy and was effective when received by insurer, despite return of form to insured for correction in accordance with form's instructions to use full names).

The State Farm policy plainly provided that Ed could change the policy beneficiary and that the change was effective on the date that Ed signed the request. It is undisputed that Ed filled out a State Farm change form, that he tendered it to State Farm, and that State Farm received it. Ed's request to change the beneficiary to Toni substantially complied with the policy, and State Farm had no basis to reject Ed's request (it did so by drawing a large "X" on the form and returning it to Ed's State Farm agent). Thus, Lisa cannot rely on State Farm's wrongful rejection of Ed's request in her attempt to establish herself as the beneficiary of the State Farm policy.

No one disputes that Ed's intent was to make Toni the beneficiary. *See Oates,* 713 S.W.2d at 364 ("designation of a given person raises a presumption that the named person was intended by the insured to receive the proceeds of the policy"). And no one disputes that the sole purpose of the AID's insurance provision was to provide security to Linda for the payment of monthly contractual alimony by Ed and his estate; the purpose was not to make Linda the policy beneficiary. Upon Ed's death, his estate was bound to continue the alimony payments. If the estate did not or could not pay the monthly alimony, only then were the policy benefits payable to Linda to satisfy the monthly contractual alimony.[4] Finally, the AID even provides that Ed may name another beneficiary as long as Linda is maintained as a beneficiary in an amount sufficient to pay her the alimony remaining payable under the AID.

For these reasons, we find the cases relied on by Lisa to be distinguishable from the facts of this case. These cases hold that the general rule that a policy owner or insured has the right to change the named beneficiary is limited when he agrees—usually in a divorce agreement—to designate a certain beneficiary and not to change that beneficiary. *See Alexander v. Alexander,* 701 S.W.2d 48, 50 (Tex.App.-Dallas 1985, writ ref'd n.r.e); *Hudspeth v. Stoker,* 644 S.W.2d 92, 96 (Tex.App.-San Antonio 1982, writ ref'd); *Tomlinson v. Lackey,* 555 S.W.2d 810, 812 (Tex.Civ. App.-El Paso 1977, no writ); *Box v. Southern Farm Bureau Life Ins. Co.,* 526 S.W.2d 787, 789 (Tex.Civ.App.-Corpus Christi 1975, writ ref'd n.r.e.). In each of these cases, the policy owner surrendered his right to change the beneficiary by agreeing to maintain a certain person as the beneficiary, whereas Ed was given the explicit right in the AID to change benefi-

---

**4.** Toni concedes that Ed's beneficiary change to her was subject to Linda's security interest in the policy proceeds. *See Burke,* 614 S.W.2d at 849 (holding that husband's benefi- ciary change to second wife was subject to first wife's community interest in policy proceeds).

ciaries. None of these cases held that *the insurer* had the right to reject the change; they merely held that the owner or insured did not have the right to make the change. Instead, the cases on this issue have held that the insurer does not have such a right. *See Burke,* 614 S.W.2d at 849 (insurer had neither the contractual right nor legal standing to prevent the insured from changing the beneficiary to his second wife); *Salvato,* 424 S.W.2d at 5 (insurer's right to question the validity of policy owner's change in beneficiary determined by policy's provisions, and insurer's duty is to comply with request that complies with policy).

We hold that Ed's designation of Toni as the beneficiary was effective on the date that Ed signed the request, subject to Linda's interest in the policy proceeds to the extent that they serve as security for the monthly contractual alimony payments owed by Ed's estate.[5] Any other result would defeat the policy's language, Ed's intent, and the AID's purpose. Furthermore, but not critical to our holding, it appears from the record that the $124,882.03 Lincoln National policy, which was listed in the AID along with the two State Farm policies as security for the alimony, satisfied the AID's requirement that Ed maintain those policies in an amount sufficient to pay the outstanding alimony amount. When Ed made Toni the State Farm beneficiary in August 2002, the alimony payable to Linda was $120,000. *Cf. Korzekwa v. Prudential Ins. Co.,* 669 S.W.2d 775, 778 (Tex.App.-San Antonio 1984, writ dism'd w.o.j.) (holding that husband's beneficiary change from former wife to daughter, in violation of temporary order, was not voided where estate had sufficient assets to reimburse

former wife). Because the Lincoln National policy satisfied the amount of outstanding alimony payable to Linda, Ed was free, under the AID, to change the State Farm $500,000 policy beneficiary to Toni.

The trial court did not err in finding Toni to be the rightful beneficiary. We overrule Lisa's three issues.

### State Farm's Article 21.55 Liability

State Farm complains of the trial court's award of attorney's fees, statutory penalties and their calculation, and prejudgment interest.

In its first issue, State Farm argues that the trial court erred by assessing penalties and attorney's fees, asserting that, as a matter of law, Toni was not a claimant under Article 21.55 and that its filing of the interpleader action invoked a common-law exception to Article 21.55 liability.

Article 21.55 of the Texas Insurance Code, the Prompt Payment of Claims Act, requires an insurer to follow certain procedures and meet certain deadlines when it receives, accepts, rejects, or pays an insurance claim. *See* TEX. INS.CODE ANN. art. 21.55 (Vernon Supp.2004–05). The stated purpose of the Act is to require insurers to promptly pay claims. *Id.* § 8; *see also Creighton v. Barnes,* 152 Tex. 309, 257 S.W.2d 101, 104 (1953) ("Prompt payment of life insurance to those who are beneficiaries is of inestimable importance to those who are left behind at the death of an insured. Delay and confusion resulting in unnecessary hardships should be avoided.").

The elements of an Article 21.55, section 6 claim are: (1) a claim under an insurance policy; (2) the insurer is liable for the

---

5. In this respect, the constructive trust agreed to by Toni and Linda and fashioned by the trial court was an appropriate remedy. *See*

*Hudspeth v. Stoker,* 644 S.W.2d 92, 94–96 (Tex.App.-San Antonio 1982, writ ref'd).

claim; and (3) the insurer has failed to follow one or more sections of Article 21.55 with respect to the claim. TEX. INS.CODE ANN. art. 21.55 § 6; *Allstate Ins. Co. v. Bonner,* 51 S.W.3d 289, 291 (Tex.2001). If an insurer delays payment of a claim following its receipt of properly requested items for more than sixty days, the insurer shall pay damages of, in addition to the amount of the claim, 18% per annum on the claim amount and reasonable attorney fees. TEX. INS.CODE ANN. art. 21.55 §§ 3(f), 6.

Toni's claim against State Farm is based on State Farm's failure to pay her the policy proceeds within sixty days of receipt of her September 11, 2002, claim. State Farm did not pay Toni within sixty days; instead, on November 22, 2002, seventy-two days later, it filed its interpleader action and deposited the policy proceeds into the registry of the court.

■ State Farm first argues that Toni is not a "claimant" under Article 21.55. A "claimant" is defined as "a person making a claim." *Id.* § 1(2). The statute defines "claim" as "a first party claim made by an insured or a policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract that must be paid by the insurer directly to the insured or beneficiary." *Id.* § 1(3). State Farm's argument is thus premised on its assertion that Toni was not a named beneficiary because Ed's request to name Toni had not been "recorded" by State Farm. We have already rejected this assertion in rejecting Lisa's arguments, and we reject it on the same grounds with respect to Toni's Article 21.55 claim against State Farm. Ed's designation of Toni as the beneficiary was effective on the date that Ed signed the request, and Toni is a claimant for purposes of Article 21.55.

■ State Farm next asserts that its filing of the interpleader action invoked a common-law exception to Article 21.55 liability. Initially, we note that there is no "good-faith" defense to Article 21.55 liability. *Cater v. United Servs. Auto. Ass'n,* 27 S.W.3d 81, 84 (Tex.App.-San Antonio 2000, pet. denied). If an insurer is found liable under the policy, the 18% statutory penalty can be awarded even if the insurer had a reasonable ground for denying coverage. *St. Paul Reinsurance Co. v. Greenberg,* 134 F.3d 1250, 1254 n. 21 (5th Cir.1998) (citing *Higginbotham v. State Farm Mut. Auto. Ins. Co.,* 103 F.3d 456, 461 (5th Cir.1997)); *see also Oram v. State Farm Lloyds,* 977 S.W.2d 163, 167 (Tex.App.-Austin 1998, no pet.) (even though insurer's interpretation of policy was reasonable, rejection of claim was wrong because supreme court later found claim was not excluded by policy). If an insurer rejects a claim, and the rejection is later determined to be wrongful, the insurer will be liable for having delayed payment for more than sixty days. *Higginbotham,* 103 F.3d at 461. State Farm acknowledges that "good-faith" is not a defense to Article 21.55 liability but distinguishes these cases because they involve the denial of claims and are not interpleader actions.

■ State Farm relies on a common-law interpleader exception to Article 21.55 liability: If a reasonable doubt in fact or law exists as to which rival claimant is entitled to insurance policy proceeds, and for that reason the insurer in good faith declines to pay the named beneficiary but admits liability on the policy and deposits the funds, it is liable only for the policy's face amount. *Great Am. Reserve Ins. Co. v. Sanders,* 525 S.W.2d 956, 958 (Tex. 1975). In *Sanders,* where the predecessor to Article 21.55 (former Article 3.62) required payment by the life insurer within thirty days to avoid statutory penalties and attorney's fees, the insurer filed the interpleader thirty-seven days after receiv-

ing demands for the policy proceeds. The supreme court held that the insurer was not liable for the penalty and attorney's fees based on the facts of the case but noted: "We are not deciding whether in another case a period of delay before interpleading the competing claimants might be so unreasonable as to justify imposition of the statutory penalty." *Id.* at 959.

■ Such a case was found where the life insurer did not admit liability on the policy thirty-seven days after the claim was made (under former Article 3.62's thirty-day requirement) and did not deposit the proceeds until almost seven months after suit was filed against the insurer. *See Cross v. John Hancock Mut. Life Ins. Co.,* 722 S.W.2d 759, 760–61 (Tex.App.-Houston [14th Dist.] 1986, no writ).[6] In another case, the insured was an agent of the insurer and over time had embezzled from the insurer, using some of the embezzled funds to pay premiums on a $300,000 life insurance policy. *Marineau v. General Am. Life Ins. Co.,* 898 S.W.2d 397, 400 (Tex.App.-Fort Worth 1995, writ denied). After the insured killed himself and his beneficiary spouse sought the policy's face amount, the insurer filed a declaratory judgment action for a determination of the rights of the parties to the proceeds. The insurer did not interplead the proceeds, initially taking the position that it was entitled to all the proceeds. The court of appeals affirmed the trial court's finding that the insurer was entitled (through a constructive trust) to a share (68.1%) of the proceeds proportionate to the amount of embezzled funds in the insured's account from which he had paid the premiums, but it further held that the controversy over the proceeds and the declaratory

judgment action did not preclude the penalty and attorney's fees under former Article 3.62, finding their award to be mandatory when the insurer is held liable for any amount on the policy. *Id.* at 405. "Where an insurer has doubt that the claimant is entitled to the proceeds of the policy, it may decline to pay the claim, but it then takes the chance of being wrong and incurring statutory penalties and attorney's fees, should it be held liable for the proceeds." *Id.* at 404.

■ An unreasonable delay in interpleading funds can thus result in the imposition of Article 21.55's penalty. *Risner v. Amex Life Assurance Co.,* 1993 WL 55957 at *2 (N.D.Tex.1993). "How much time must pass before a delay in interpleading becomes unreasonable depends largely on the circumstances of the particular case." *Id.* (numerous life insurers, who spent from 8 to 15 months investigating claims and delayed interpleading from 7 to 23 months after claims were filed, were not liable for statutory penalty where insured was murdered while vacationing in Columbia and spouse beneficiary's involvement in murder was suspected); *accord Franklin Life Ins. Co. v. Greer,* 219 S.W.2d 137, 143 (Tex.Civ.App.-Texarkana) (court excused insurer's 11–month delay in interpleading funds where beneficiary was suspected of murdering insured), *rev'd on other grounds,* 148 Tex. 166, 221 S.W.2d 857 (1949). Other cases have held that an insurer can avoid Article 21.55 liability by filing an interpleader outside the statutory window, or after a claimant has first filed suit, but any delay still must be reasonable. *See Clements v. Minnesota Life Ins. Co.,* 176 S.W.3d 258, 263–64, 2004 WL 1516450 at *4 (Tex.App.-Houston [1st

---

**6.** In *Cross,* the court stated that "there is no good faith exception to the statute, except where the insurance company is in doubt as to whom the money should be paid because of conflicting claims. This exception applies only when the insurance company acts in

good faith and makes its position known promptly and clearly, promptly admits its liability and makes a bona fide tender of the full amount due." *Id.* (citing *Boomer v. Massachusetts Bonding & Ins. Co.,* 148 S.W.2d 945, 949 (Tex.Civ.App.-El Paso 1941, writ dism'd)).

Dist.] July 8, 2004, no pet.) (insurer may not "unreasonably delay"); *Gabler v. Minnesota Mut. Life Ins. Co.*, 498 S.W.2d 413, 418 (Tex.Civ.App.-Texarkana 1973, no writ) (court declined to award penalty where insurer delayed four months after death of insured to interplead funds).

The cases addressing the common-law interpleader exception to Article 21.55 liability require the insurer to interplead without unreasonable delay, which is determined by the facts of each case. To adequately address State Farm's first issue, we thus must review the evidence and the trial court's findings of fact to consider whether State Farm's delay in filing the interpleader was unreasonable.

## Legal and Factual Sufficiency of the Evidence

The trial court made numerous findings of fact and conclusions of law that Toni

requested.[7] State Farm also requested findings of fact and conclusions of law, but it does not raise as an issue on appeal the trial court's refusal of its requests.

In its brief, State Farm complains that the trial court erred because State Farm conclusively proved as a matter of law "that Article 21.55 does not apply to this case" and that the trial court's award of statutory penalties and attorney's fees is against the great weight and preponderance of the evidence. It also asserts that the evidence is legally and factually insufficient to support the trial court's award of statutory penalties and attorney's fees under Article 21.55.[8]

■■■■ Toni had the burden of proof on the elements of her Article 21.55 claim. Except for Toni's claimant status, which we have already addressed as a matter of

7. Findings of fact in a bench trial have the same force and dignity as a jury's verdict upon jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). When challenged on appeal, the findings are not conclusive on the appellate court if there is a complete reporter's record, as there is here. *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex.1987); *In re K.R.P.*, 80 S.W.3d 669, 673 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). The trial court's findings will not be disturbed if there is evidence of probative force to support them. *Barrientos v. Nava*, 94 S.W.3d 270, 288 (Tex.App.-Houston [14th Dist.] 2002, no pet.). A trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). We review the trial court's conclusions of law de novo. *Smith v. Smith*, 22 S.W.3d 140, 143–44 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Under de novo review, the reviewing court exercises its own judgment and redetermines each legal issue. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex.1999). We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory that the evidence

supports. *Waggoner v. Morrow*, 932 S.W.2d 627, 631 (Tex.App.-Houston [14th Dist.] 1996, no writ). Incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *Id.*

8. State Farm's fourth issue complains that the evidence is legally and factually insufficient to support various specific findings of fact. Because State Farm's fourth issue raises the sufficiency of the evidence, and because State Farm's brief addresses the sufficiency of the evidence throughout the discussion of its first issue, we will address State Farm's complaint that the evidence establishes as a matter of law that Article 21.55 does not apply or that the trial court's implied finding is against the great weight and preponderance of the evidence. *See* Tex.R.App. P. 38.1(e) ("The brief must state conclusively all issues or points presented for review. The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."); *Jakab v. Gran Villa Townhouses Homeowners Ass'n, Inc.*, 149 S.W.3d 863, 866 n. 1 (Tex.App.-Dallas 2004, no pet.); *Stephenson v. LeBoeuf*, 16 S.W.3d 829, 833–44 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

law, State Farm does not argue that Toni failed to meet her burden on any element; in fact, no dispute exists on whether State Farm failed to pay Toni's claim within Article 21.55's sixty-day requirement. Rather, the issue that State Farm apparently intends to address is the legal and factual sufficiency of the evidence on its common-law defensive exception that it did not unreasonably delay in filing the interpleader action.[9] In proving either its defensive exception or its interpleader elements, State Farm had the burden of proving that its delay in filing the interpleader was reasonable (or not unreasonable).

When the party that had the burden of proof at trial complains of legal insufficiency of an adverse finding, that party must demonstrate that the evidence establishes conclusively, *i.e.* as a matter of law, all vital facts in support of the finding sought.[10] *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001). We first examine the record for evidence supporting the adverse finding, ignoring all evidence to the contrary. *Id.* If more than a scintilla of evidence supports the adverse finding, our inquiry ends. *Id.* "More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995) (citations omitted); *Beard v. Beard*, 49 S.W.3d 40, 55 (Tex.App.-Waco 2001, pet. denied).

When the party complaining of the factual sufficiency of the evidence had the burden of proof at trial, it must demonstrate that the adverse finding is contrary to the great weight and preponderance of the evidence.[11] *Francis*, 46 S.W.3d at 242; *Beard*, 49 S.W.3d at 55. We weigh all the evidence, and we can set aside the adverse finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Francis*, 46 S.W.3d at 242. In doing so, we must detail the evidence and state in what regard the contrary evidence greatly outweighs the evidence in support of the adverse finding. *Id.* We will apply these standards to the arguments raised by State Farm.

In addition to the evidence already detailed above, the following correspondence was exchanged among the various parties:

· A September 5, 2002, letter from Toni's lawyer to State Farm agent Warren Barker (with a copy of it to be sent to State Farm), pointing out (1) Ed's August 1, 2000[sic] change-of-beneficiary designation of Toni, (2) the policy language that his request took effect the date Ed signed the request and that

---

**9.** The elements of an interpleader action are: (1) the party is either subject to, or has reasonable grounds to anticipate, rival claims to the same fund or property; (2) *the party has not unreasonably delayed filing an action for interpleader;* and (3) the party has unconditionally tendered the fund or property into the court's registry. *Hanzel v. Herring*, 80 S.W.3d 167, 173 (Tex.App.-Fort Worth 2002, no pet.) (citing *Bryant v. United Shortline Inc.*, 984 S.W.2d 292, 296 (Tex.App.-Fort Worth), *aff'd*, 972 S.W.2d 26 (Tex.1998)).

**10.** A "matter-of-law" or "conclusive-evidence" issue is used when the party with the burden of proof challenges the *legal sufficiency* of the evidence to support unfavorably answered jury questions or unfavorable express or implied findings of fact. *See Gooch v. American Sling Co.*, 902 S.W.2d 181, 183–84 (Tex.App.-Fort Worth 1995, no writ).

**11.** An "against-the-great-weight-and-preponderance" issue is used when the party with the burden of proof challenges the *factual sufficiency* of the evidence to support the factfinder's "failure to find." *See Gooch*, 902 S.W.2d at 183–84.

the proceeds were payable to the insured's beneficiary, and (3) that Toni was thus the properly designated beneficiary and the proceeds were payable to her;

· State Farm's September 10, 2002, letter to Toni's lawyer, acknowledging receipt of his September 5, 2002, letter and transmitting claim forms for Toni's completion;

· A September 18, 2002, letter from Toni's lawyer to State Farm, enclosing the AID and (1) explaining his view of the AID's effect on the State Farm policy and that Ed had the right in the AID to change beneficiaries, (2) that Ed's designation of Toni was thus proper under the policy and the AID, (3) that Ed's estate was liable under the AID for Linda's monthly contractual alimony payment (which at that time was for twenty-four more months, for a total of $120,000), (4) that therefore $380,000 in policy proceeds were immediately payable to Toni, and (5) that the remaining $120,000 be held for Toni in an interest bearing account as security for the alimony should Ed's estate not make the monthly payments, with $5,000 being released each month to Toni as Ed's estate pays each monthly alimony payment until the final payment is made;

· State Farm's October 1, 2002, letter to Toni's lawyer, stating (1) that Toni was not the primary beneficiary of record, (2) that her claim was based on an "unrecorded change of beneficiary request dated August 1, 2002," (3) that Linda was the "primary beneficiary of record," (4) that Lisa had filed an adverse and conflicting claim on the $500,000 policy, (5) that Toni was not listed as the primary beneficiary of record on the $175,000 State Farm policy and that Toni's claim on

that policy was adverse and competing with Lisa's claim, (6) that State Farm "is not in a position to determine who is entitled to the proceeds of these policies," and (7) that State Farm was retaining an attorney and if the parties cannot reach an agreement, State Farm would file an interpleader;

· State Farm's November 19, 2002, letter to Toni's lawyer, stating that State Farm had paid the $175,000 State Farm policy proceeds to Lisa because Linda had earlier consented to Ed's change of beneficiary, and that the State Farm $500,000 policy file had been referred to an attorney for filing an interpleader, which "will be filed in the very near future."

The trial court did not make a specific finding that State Farm unreasonably delayed in filing its interpleader, nor did Toni request such a finding. It did find, however, the following related facts:

· Ed's August 1, 2002 beneficiary change to Toni was effective on that day (No. 5);

· Toni's claim on the policy was received by State Farm on September 11, 2002 (No. 9);

· State Farm did not accept or reject Toni's claim within fifteen business days (Nos. 11, 12);

· The policy did not give State Farm the right to approve or reject Ed's August 1, 2002 beneficiary change to Toni (No. 16);

· State Farm did not pay the policy proceeds to Toni within sixty days of receiving Toni's claim (No. 18);

· State Farm did not comply with Article 21.55's prompt payment requirement and is thus liable to pay, in addition to the claim, an 18% penalty and attorney's fees (No. 20);

· The AID explicitly provided that Ed could name whomever he chose as beneficiary for the remainder of the insurance policy not subject to Linda's security in the policy benefits for contractual alimony payments (Nos.26, 27);

· In his September 18, 2002 letter, Toni's attorney explained to State Farm that no adversity existed between her claim to the policy benefits not subject to Linda's alimony security interest ($380,000) and demanded immediate payment on Toni's claim in that amount (Nos.33, 34);

· State Farm had no right to refuse to recognize what it referred to as Ed's "unrecorded change of beneficiary" to Toni, which it asserted Toni's claim was based on (Nos.35, 36);

· Because State Farm refused to accept Ed's August 1, 2002 beneficiary change to Toni, its actions were unreasonable (No. 44);

· State Farm should not have had any reasonable doubt that Toni was the primary beneficiary under Ed's August 1, 2002 beneficiary change (No. 46).

When a party requests findings and the trial court files them, the court of appeals can presume that omitted findings support the judgment only when (1) an element of the ground of recovery or defense was included in the findings of fact, (2) the omitted element was not properly requested, and (3) the omitted finding is supported by the evidence. TEX.R. CIV. P. 299; *American Nat'l Ins. Co. v. Paul,* 927 S.W.2d 239, 245 (Tex.App.-Austin 1996, writ denied); *Warehouse Partners v. Gardner,* 910 S.W.2d 19, 23 (Tex.App.-Dallas 1995, writ denied); see *Tarrant County Water Control & Improvement Dist. v.*

*Haupt, Inc.,* 854 S.W.2d 909, 913 (Tex. 1993) (where record contained some evidence of reasonableness, that issue was deemed found in support of trial court's judgment).

In this case, the trial court found that State Farm did not pay Toni's claim within sixty days and found a violation of Article 21.55. The trial court also found that State Farm's refusal to accept Ed's August 1, 2002 beneficiary change to Toni was "unreasonable" and that State Farm "should not have had any reasonable doubt" that Toni was the primary beneficiary. Elements of both the ground of recovery and State Farm's defense are thus included in the findings. And because the evidence supports a finding that State Farm's delay in filing the interpleader was unreasonable, we find that Rule 299 is met and presume an omitted finding by the trial court that State Farm's delay was unreasonable.

As we held above, the evidence and the applicable law show that State Farm incorrectly rejected Ed's designation of Toni as the beneficiary. Additionally, the record is silent on whether State Farm ever knew the specific terms of the AID (especially that Linda was an "irrevocable" beneficiary of the policy benefits only as security for the amount of outstanding alimony) until the AID was provided and explained to State Farm by Toni's lawyer. Toni's lawyer's September 5, 2002 and September 18, 2002 letters spelled out the relevant policy provisions, the propriety of Ed's August 1, 2002 beneficiary change and its effectiveness as of that date, and the terms of the AID. Yet State Farm inexplicably waited until November 22, 2002 (seventy-two days after receiving Toni's claim and two days after Toni filed suit) to file its interpleader action.[12]

12. In its brief State Farm asserts that it wait- ed this long to file the interpleader action

This case is more akin to *Marineau*, where the insurer initially determined the beneficiary was not entitled to any of the proceeds, when she was in fact entitled to a percentage, subject to a constructive trust on the amount that she was not entitled to. *Marineau*, 898 S.W.2d at 404–05. The insurer was liable for the penalty and attorney's fees because of its initial mistake. Likewise, State Farm initially erred in rejecting Ed's beneficiary designation of Toni, a factor distinguishing this case from other interpleader cases. The purpose of interpleader is to allow an "innocent" stakeholder facing rival claims to let the court decide who is entitled to the funds. *Union Gas Corp. v. Gisler*, 129 S.W.3d 145, 153 (Tex.App.-Corpus Christi 2003, no pet.). Because interpleader has its roots in equity and provides an equitable remedy for the stakeholder, the stakeholder that seeks equity must "do equity." *Id.* Thus, for example, if the stakeholder is responsible for the conflicting claims to the funds, the stakeholder cannot recover attorney's fees. *Id.; Brown v. Getty Reserve Oil, Inc.*, 626 S.W.2d 810, 815 (Tex. App.-Amarillo 1981, writ dism'd). Or, if the stakeholder creates its own predicament, the trial court, in the exercise of its equity jurisdiction, can deny the interpleader. *Gisler*, 129 S.W.3d at 153.

State Farm also refused Toni's lawyer's request that it pay Toni the balance of the proceeds ($380,000) that was not subject to Linda's security in the amount of payable alimony ($120,000). State Farm's initial error in wrongfully rejecting Ed's beneficiary change created the uncertainty, allowed the competing claims, and led to the interpleader, and there is evidence that

supports the trial court's findings that State Farm's actions were unreasonable and that it should have had no doubt that Toni was the beneficiary. Moreover, because State Farm created its own predicament, the trial court, in the exercise of its equity jurisdiction, would not have abused its discretion in finding that State Farm was not an "innocent" stakeholder and was not entitled to the common-law interpleader exception to Article 21.55 liability. *See Gisler*, 129 S.W.3d at 153. In sum, there is evidence that State Farm's actions were unreasonable and that those actions caused the delay, which in this case amount to an unreasonable delay.

We hold that more than a scintilla of evidence exists to support the omitted finding that State Farm unreasonably delayed in filing the interpleader and that State Farm thus did not conclusively establish that its delay was not unreasonable. Legally sufficient evidence supports this omitted finding. And after weighing all the evidence, we hold that the omitted finding of unreasonable delay is not against the great weight and preponderance of the evidence. State Farm's challenge to the legal and factual sufficiency of the evidence on its unreasonable delay is thus overruled.

### Challenges to Specific Findings of Fact and Conclusions of Law

State Farm's fourth issue challenges various findings of fact and conclusions of law made by the trial court. The trial court is required to make findings of fact only on controlling issues, not on matters of evidence. *ASAI v. Vanco Insula-*

because it attempted to facilitate a settlement among the parties, but there is no evidence in the record supporting this assertion. *See Quanaim v. Frasco Rest. & Catering*, 17 S.W.3d 30, 42 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (factual statements in par-

ty's own motion or response are not evidence); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 838 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (factual statements in party's own pleading are not evidence).

*tion Abatement, Inc.,* 932 S.W.2d 118, 122 (Tex.App.-El Paso 1996, no writ); *Rafferty v. Finstad,* 903 S.W.2d 374, 376 (Tex.App.-Houston [1st Dist.] 1995, writ denied). An issue is controlling when it will support a basis for judgment for the issue's proponent. *Taylor v. Texas Dept. Pub. Safety,* 754 S.W.2d 464, 468 (Tex.App.-Fort Worth 1988, writ denied).

■ State Farm complains that several findings (Nos. 3, 13, 38, and 41) are not supported by the evidence because they allegedly are incomplete renditions of matters in evidence, such as policy or letter excerpts. Because these complaints go to evidentiary matters that are not controlling (and that we have otherwise addressed in State Farm's first issue), the trial court did not err. *See Rafferty,* 903 S.W.2d at 376 (trial court not required to make findings that relate merely to evidentiary matters). State Farm also alleges that the trial court erred by not including its requested finding of fact that Linda made a claim on the policy. This complaint is waived because State Farm did not raise as an issue the trial court's refusal to make additional findings, but regardless, this complaint likewise goes to an evidentiary matter that is not controlling and that we otherwise addressed in State Farm's first issue.

Next, State Farm complains that numerous findings and conclusions (Nos. 5, 15, 16, 36, 39, and 42) relating to Ed's August 1, 2002 beneficiary change to Toni, its wrongful refusal by State Farm, and the effect of the AID are not supported by the evidence. In ruling on Lisa's issues and State Farm's first issue, we have already considered and rejected State Farm's complaints on these matters.

The trial court made numerous findings and conclusions (Nos. 23, 24, 48, 49, 50, and 51) that Toni was entitled to a penalty and attorney's fees under Article 21.55.

State Farm re-urges that the trial court's conclusions are erroneous as a matter of law, but we have already considered and rejected State Farm's complaints on these matters.

Finally, State Farm complains of the trial court's findings and conclusions on prejudgment interest and the calculation of the penalty (Nos. 47 and 48). Those complaints are addressed below in our disposition of State Farm's second and third issues.

For the above reasons, we overrule State Farm's fourth issue.

### Prejudgment Interest

■ State Farm's second issue complains that the trial court erred as a matter of law in awarding prejudgment interest. A successful claimant under Article 21.55 can recover prejudgment interest on the amount of the claim. *Dunn v. Southern Farm Bureau Cas. Ins. Co.,* 991 S.W.2d 467, 478 (Tex.App.-Tyler 1999, pet. denied); *see Teate v. Mutual Life Ins. Co.,* 965 F.Supp. 891, 894 (E.D.Tex.1997) (citing *Marineau,* 898 S.W.2d at 405). Because the trial court did not err in awarding prejudgment interest, we overrule State Farm's second issue.

### Article 21.55 Penalty Calculation

Next, in its third issue, State Farm asserts error as a matter of law in the trial court's calculation of the 18% penalty under Article 21.55. The trial court awarded $76,520.19 as of August 1, 2003, and a per diem of $246.57 until the judgment was signed. The judgment was signed on August 11, 2003, so the total statutory penalty awarded was $78,985.89. State Farm argues that the 18% per annum penalty is not applicable at all because its liability to Toni did not arise until the trial court entered a final judgment. Alternatively, it

claims that if Article 21.55 applies, the penalty should have been calculated on the $500,000 policy proceeds for only a period of twelve days: from November 10, 2002, the sixtieth day after State Farm received Toni's claim, until November 22, 2002, the day State Farm deposited the proceeds into the registry of the court, for a total of $2,958.84.

The statutory damages start accruing on the date the insurer violates the statute. *Texas Farmers Ins. Co. v. Cameron,* 24 S.W.3d 386, 400 (Tex.App.-Dallas 2000, pet. denied); *Teate,* 965 F.Supp. at 894. In this case, that date is November 10, 2002, the sixtieth and last day that State Farm was allowed to pay Toni the proceeds to avoid Article 21.55's penalties. The remaining issue is thus whether State Farm's tender of the proceeds into the registry of the court stopped the accrual of the 18% penalty or whether the penalty continued to accrue until judgment was entered.

State Farm's argument that the ending date should be the date of the judgment relies on *Wellisch v. United Services Automobile Ass'n,* a case involving an uninsured/underinsured motorist (UIM) claim. *Wellisch v. United Servs. Auto. Ass'n,* 75 S.W.3d 53 (Tex.App.-San Antonio 2002, pet. denied). That case held that the insurer's liability for UIM benefits does not arise until the claimant is legally entitled to those benefits, which generally requires a settlement with the tortfeasor or a judicial determination following trial on the issue of the tortfeasor's liability. *Id.* at 58. Thus, rather than the date of the covered event (*i.e.* the accident) being the date the insurer's liability arose, the date the trial court entered final judgment was the date liability on the UIM claim arose. *Id.*

State Farm relies on *Cater v. United Services Automobile Ass'n* for its argument that the date it deposited the policy proceeds with the court should toll the penalty. *Cater v. United Servs. Auto. Ass'n,* 27 S.W.3d 81 (Tex.App.-San Antonio 2000, pet. denied). This case involved a foundation damage claim that, except for the plaintiff's Article 21.55 claim for penalties and attorney's fees, was settled after suit was filed for $40,000. The plaintiff was paid the settlement, and the Article 21.55 claims proceeded to trial. The plaintiff contended that she was entitled to the 18% penalty through the date of judgment, but the court held that she was entitled to the penalty only until she was paid the settlement. *Id.* at 85.

Neither of these cases is dispositive. *Cater* is distinguishable because its holding was based on the fact that the claimant was actually paid. While State Farm has deposited the proceeds with the court, Toni still has not been paid. *Wellisch* is distinguishable because a ripe UIM claim requires a settlement or a negligence trial.

The purpose of Article 21.55 is to require prompt payment of insurance claims, and we are to liberally construe the Act to promote this purpose. TEX. INS. CODE ANN. art. 21.55 § 8. We have found that State Farm should have accepted Ed's beneficiary designation of Toni. By extension, when Ed died and Toni made a claim on the policy, State Farm should have promptly paid it. Instead, State Farm's wrongful rejection of Ed's request set in motion a series of events that led to the interpleader, and Toni still has not been paid. To promote the purpose of Article 21.55, we hold that the 18% penalty should be calculated until the date of the judgment. *See Cameron,* 24 S.W.3d at 400 (calculating penalty to time of judgment).

Accordingly, Toni is entitled to a penalty award of 18% per annum on $500,000 from November 10, 2002 to August 11, 2003. The record does not reflect the method

used in the trial court's calculation of the judgment's total statutory penalty award of $78,985.89. The correct amount is calculated by the formula $P \times R \times T = I$, where $P$ is the amount of the claim ($500,000), $R$ is the interest rate (.18), $T$ is the time (274 days divided by 365 days = .75 years), and $I$ ($67,500) is the interest award. *Cameron*, 24 S.W.3d at 400 & n. 5. In this case, $67,500 is the correct penalty calculation. The trial court incorrectly calculated the penalty, so we must reform that part of the judgment.

## Conclusion

We overrule all of Lisa's and State Farm's issues. We reform the trial court's judgment to reflect the correct statutory penalty amount of $67,500. We affirm the judgment as reformed.

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

This is a complex fact pattern in which State Farm should be entitled to the safe harbor of impleading the policy limits. While State Farm did not avail itself of this option until a couple of weeks after the 60–day period when it should have acted, State Farm delivered into the registry of the court, in addition to the face amount of the policy, interest on the face amount for that period, and explained its reason for that delay.

State Farm was presented with three claims upon the death of Ed. It did not matter to State Farm who received the proceeds; Ed had died so it owed the face amount of the policy to someone. But State Farm also realized it had a problem. In addition to having three claimants, State Farm knew that Ed had an agreement incident to divorce with one claimant that, to some extent, controlled the designation of beneficiaries under the life insurance policy. It also knew that Ed had

recently attempted to make a change in primary beneficiaries to someone other than the ex-wife and that it had rejected that attempted change. Thus, when the issue of who to pay is examined from a reasonable person perspective based on the facts State Farm knew, there is no doubt that a high level of concern was entirely justified.

But the trial court's and this Court's analysis is tainted by Linda's (the ex-wife) agreement with Toni (the widow). This agreement should not be allowed to impact the analysis in any way. I would, however, note that I believe the widow has admitted in her arguments and briefing, that the ex-wife's rights are superior to her rights, if any, to the policy proceeds, even if they are limited rights.

Thus, footnote 4 is very telling to what is happening here. If the widow concedes that the designation of her as beneficiary is subject to the ex-wife's interest, she is conceding that the change to make her the "primary beneficiary" did not really have that effect at all. The widow's recognition of the ex-wife's interest was a last minute deal made to avoid having the ex-wife's interest undermine what the widow wanted to argue. Our analysis should focus on the legal issue without letting the side deal made between the widow and the ex-wife affect the result.

What the majority has actually done is to make the ex-wife the successor or secondary beneficiary in place of Lisa (the daughter), leaving the ex-wife's interest undisturbed. Ed's right to change the beneficiary was limited by the agreement incident to divorce, which his effort to designate the widow as primary beneficiary clearly violated. The violation was so clear, the widow capitulated the issue and the trial court imposed the constructive trust for the benefit of the ex-wife. This

interest of the ex-wife is expressly recognized by the majority opinion but is an interest totally contrary to the beneficiary designation change signed by Ed.

And all of the problems discussed above are simply the prelude to why State Farm could not have possibly known, with any degree of reliability, who the rightful beneficiary of the policy was by the end of the 60–day period when it was time to pay-out on the policy. It has taken the majority a good deal of legal analysis and effort to explain why the widow was the beneficiary, but even then they must still recognize the interest of the ex-wife. How could State Farm have done this other than through the interpleader? Again, the concession in footnote 4 looms large in this result. There was no way State Farm could resolve the dispute between the various claimants, so it sought a safe harbor, an interpleader action. State Farm did not care who got the policy proceeds. But it did not want to pay out to the wrong person, only to find out later that it was going to have to pay someone else.

There is also a difference, or should be, in the analysis of who the beneficiary is versus who is recorded as the beneficiary. On the very form completed by Ed, the distinction is made as to being a recorded beneficiary. State Farm established that the ex-wife was never recorded by State Farm as the beneficiary. There is no evidence to the contrary.

I have endeavored to boil the issues in this case down to some rather simple questions:

1. Did Ed contractually give up the right to change the primary beneficiary? Yes. In the agreement incident to divorce, Ed gave up that right.

2. Was State Farm aware that Ed had given up the right to change the primary beneficiary? Yes. The transmittal letter returning Ed's attempted designation of the ex-wife expressly noted the limitation on the ability to change the beneficiary. (See Appendix A). State Farm had also received and recorded a change of beneficiaries on another policy which expressly noted that the ex-wife was the "irrevocable beneficiary" of the policy. The ex-wife had been designated the primary beneficiary as follows: "LINDA MARTINEZ, 41, EX–WIFE, IN AC-CORDANCE WITH PROVISIONS OF DIVORCE DECREE DATED 09–15–94." (beneficiary designation form dated 9–23–94).

3. Was State Farm's awareness sufficient to justify its refusal to accept Ed's attempt to designate a new primary beneficiary? Yes. State Farm's letter to Ed's agent sought documentation to authorize the change. (See Appendix A).

4. Is it the fact that Ed had surrendered the right to designate the primary beneficiary or State Farm's awareness of that surrender that allows State Farm to reject Ed's purported/attempted primary beneficiary change? It does not matter because State Farm was aware of the surrender of the right. But even if State Farm was not aware, the fact that Ed had given up that right, should have the same effect. As in libel/slander, truth should be a defense; and the truth is that Ed had given up the right to change the primary beneficiary. Therefore, his effort to designate the widow as primary beneficiary is not effective to accomplish that purpose.

5. What is different between Ed's earlier designation of the daughter as compared to his subsequent attempt to designate the widow as a beneficiary of the policy?

a. Under the agreement incident to divorce, Ed expressly had the right to designate the remainder beneficiary, so the designation of the daughter as the successor beneficiary did not violate the agreement.

b. Under the agreement incident to divorce, Ed expressly agreed that the ex-wife would be the beneficiary of the policy. Thus, Ed's attempt to designate the widow as the only beneficiary violated the agreement incident to divorce.

6. What was the effect of Ed's attempted designation of the widow as the primary beneficiary? If it had any effect, the ex-wife remained the primary beneficiary under the law and the daughter remained the remainder/successor beneficiary. But as the designated primary beneficiary, the widow held the ex-wife's interest under a constructive trust.

Finally, it is interesting to note that, under the majority's analysis, State Farm was supposed to know the widow's claim was the proper claim of the three submitted. But this is only because the widow agreed to recognize and protect the ex-wife's interest, and the trial court and this Court included that protection in their judgments and analysis of the designation of beneficiary that Ed made. Only with 20/20 hindsight could State Farm have avoided that problem, because it was a problem not resolved until well after the interpleader had been filed.

The competing interest of the ex-wife was memorialized in the trial court's judgment in the form of a constructive trust. There was certainly no way for State Farm to know, at any time prior to the hearing, that the ex-wife was going to capitulate and accept a limitation on her previously claimed interest. And in today's litigation environment, is it any wonder that State Farm would be cautious in the payout of $500,000?

Given that the ex-wife's interest in the policy was sufficiently strong to not only work a deal with the widow, but also to have that agreement included in the trial court's judgment, State Farm was surely justified in its reluctance to simply pay over the funds to the widow. Until that settlement between the ex-wife and the widow was reached, there was no claim on the policy, according to the widow's theory, that would have allowed the ex-wife to have any interest in the policy.

On the facts of this case, the determination that the delay in filing the interpleader was unreasonable is against the great weight and preponderance of the evidence. Indeed, I find no evidence to suggest, or that would support the inference, that State Farm unreasonably delayed the filing of the interpleader. Further, it is impossible to square what the majority has determined is an unreasonable delay in filing the interpleader action in this case, with what they held was not an unreasonable delay in filing an interpleader in *Avila v. Christopher,* No. 10–04–00021–CV, 2005 WL 1531170, 2005 Tex.App. LEXIS 5038 (Tex.App.-Waco June 29, 2005, no pet. h.)

If I had to reach the issue, I would also hold that the penalty was improperly calculated. State Farm paid the policy proceeds and interest into the registry of the court shortly after the 60–day deadline and explained the reason for the delay. Given that even this Court recognized the need to protect the ex-wife's interest by the imposition of a constructive trust, I fail to see how State Farm could be assessed the interest penalty through the date of the judgment.

For the foregoing reasons, I respectfully dissent.

APPENDIX A

The text of the letter to Ed's State Farm agent returning the attempted change of beneficiary to the widow is as follows:

Dear Warren:

We received a request to change the beneficiary on the above mentioned life insurance policy. We are unable to process this request since it is prohibited by the insured's divorce decree dated 9/15/94.

We currently show the primary beneficiary as "Linda Martinez in accordance with Divorce Decree dated 9/15/94". Therefore, since he is asking to remove the former spouse and name his current spouse as primary, we need Court documentation stating that he has the right to remove the former spouse. Since we cannot process this change, we are returning the original request to you.

The beneficiary designation for this policy remains unchanged.

If you have questions or need assistance in completing the form, please contact your State Farm agent or this office.

Sincerely,

Barbara Keck

L/H Policyholder Serv Asst IV